JERRY LYNN BUMGARNER, MINOR, BY HIS NEXT FRIEND, MRS. EMMA BUMGARNER v. SOUTHERN RAILWAY COMPANY AND MRS. J. W. YATES

and

C. M. BUMGARNER v. SOUTHERN RAILWAY COMPANY AND MRS. J. W. YATES.

(Filed 11 December, 1957)

1. **Railroads § 4—**

   In an action against a railroad company to recover for a crossing accident, allegations of the lack of warning signs at the crossing are immaterial when the evidence discloses that the driver of the car knew

the crossing and stopped for it, and allegations of excessive speed of the train are ineffective when there is no evidence in support thereof.

**2. Same—Evidence held insufficient to be submitted to jury on issue of negligence of railroad in causing crossing accident.**

Evidence that the driver of the car heard the whistle of a train before it came into view, that he slammed on his brakes, stalling the car on or near the tracks, that all the occupants of the car but one escaped, and that plaintiff passenger, upon realizing that one occupant was still in the car, went back and removed her to a place of safety, but that before plaintiff could reach a place of safety the engine struck the car and knocked it against him to his injury, together with defendant's evidence not in conflict with that of plaintiff that the engineer applied his brakes as soon as he saw the car and stopped the train within some 1600 feet after the impact, *is held* insufficient to be submitted to the jury on the question of actionable negligence of the railroad company in failing to give timely warning by bell or whistle.

**3. Automobiles § 55—**

Testimony of a minor that his mother owned the car and that he was driving it on the occasion in question with her consent and that it was understood he could drive the car whenever he came home, is sufficient to be submitted to the jury on the issue of liability under the family car doctrine.

**4. Automobiles § 47—**

Evidence that the driver of a car drove it upon a railroad track, became excited when he heard the whistle of an approaching train and slammed on the brakes, stalling the car, when time remained to have continued to a place of safety, is sufficient to be submitted to the jury on the question of the driver's negligence in an action by a passenger in the car to recover for injuries received in the accident.

**5. Automobiles § 42j—**

After a car had stalled on railroad tracks at a grade crossing and plaintiff, another passenger and defendant driver alighted, plaintiff realized that the fourth passenger was still in the car, frozen with fright, went back and got her out of the car and pushed her to a place of safety, but was himself hurt when the engine struck the car and knocked it against him. *Held:* Plaintiff will not be held guilty of contributory negligence as a matter of law in leaving a place of safety and going to a place of known danger in rescuing the passenger.

APPEAL by defendants from *Gwyn, J.,* March Term, 1957, CABARRUS Superior Court.

The two civil actions as above entitled were consolidated for trial. The first was for personal injury to Jerry Lynn Bumgarner (minor) alleged to have been proximately caused by the negligence of the defendants; and the second by the father for medical expenses and loss of services by reason of the minor's injuries.

Briefly summarized, the evidence disclosed the following: Jerry Lynn Bumgarner is a minor son of C. M. Bumgarner. The defendant Southern Railway Company's double track main line

(Washington to Atlanta) runs north and south through the town of Landis, North Carolina. East Brown Street in Landis crosses the defendant's tracks from the west at right angles and dead ends in South Railroad Avenue which parallels the tracks on the east. John Yates is the son of Mrs. J. W. Yates.

On the night of December 26, 1953, the plaintiff, Jerry Lynn Bumgarner, was a passenger in a 1946 Ford coach as it approached the railroad crossing on East Brown Street. He was sitting in the back seat on the right, and Phyllis Metcalf, now Mrs. McCardy, was in the back seat on the left. John Yates was the driver of the car. Betty Bumgarner, plaintiff's sister, was in the front seat to the right of the driver. At the time of the accident there were neither signs nor signals on East Brown Street to indicate the crossing.

The accident occurred at about 8:20 at night. The weather was clear and cold. East Brown Street is paved to the width of about 20 feet. From a point in the street about 30 feet west of the crossing, an approaching south-bound train can be seen for about 1,100 feet. From a point in the crossing it can be seen for about 600 feet. At the time the Ford approached the crossing from the west, the defendant's freight train approached from the north at a speed estimated by the plaintiff's witnesses at 50-55 miles per hour, and by the engineer at 30-35 miles per hour. The train consisted of four diesel engines and 95 freight cars.

The following is the story of the accident as told by the plaintiff's witness, John T. Yates: "I was driving a 1946 Ford sedan. The automobile was my mother's. I was familiar with East Brown Street . . . to the extent I had been over it maybe a couple of times. I understand where East Brown Street crosses over the Southern Railway tracks that is within the corporate limits of Landis. On the evening of December 26, 1953, at 8:20 p.m., I was in a Ford on East Brown Street, traveling east. When I came to the crossing I stopped a distance of . . . I don't know how close it was; I thought I could see both ways, which I looked both ways and didn't see anything, then I started across the track and about the time the front wheels got to the track, I heard a whistle, and natural impulse I hit the brakes. When I hit the brakes, it killed my engine and I looked up and the headlights of the train blinded me and I didn't know how close the train was. Trying to take time to remove the car, I didn't know whether I had time or not, I thought probably the best thing to do would be to get out. I told the others in the car to get out. I went out the left door of the car, and Betty went out the right. We went behind the car . . . When approximately the front wheel got to the track I heard a whistle. Then I slapped on my

brakes . . . I got maybe two yards behind the car before the crash . . . the train struck the front fender of my car. . . . When the train stopped it still had the crossing blocked."

Jerry Lynn Bumgarner testified: "The car had come to a complete stop. . . . John got out on the left side and my sister was getting out on the right side. It was a two-door automobile . . . I had to wait until the passengers in the front seat got out before I could get out . . . I pushed the front seat forward and got out and was clear of the car before I noticed that Phyllis was not behind me and I turned around and seen Phyllis was in the back seat and I got her out and started back towards the back of the automobile and she was clear of it, but the automobile caught my leg. The train struck the car and the car struck my leg. . . . The train was six or seven hundred feet up the track when I first saw it."

There was evidence that Phyllis Metcalf (now Mrs. McCardy) was so overcome with fright that she was unable to move until the plaintiff, Jerry Lynn Bumgarner, pulled her out from the stalled car. He pushed her clear of the automobile and the train. However, the train struck the left front fender of the automobile and hurled it against the plaintiff's leg, injuring him so badly that the leg had to be amputated. Medical and hospital bills amounted to about $2,500.

There was evidence the car involved in the wreck was purchased while John Yates was under age and the title taken in the name of Mrs. J. W. Yates, his mother. John, then in the service, furnished a part of the purchase price, and the mother the remainder. At the time of the accident John had passed his 21st birthday. He still made his home with his mother, who kept the car while he was away. He testified: "On the evening in question I had my mother's permission . . . to drive the automobile."

The individual defendant did not introduce evidence. Her motion for nonsuit at the close of the plaintiff's evidence was overruled. The Railway Company introduced evidence after its motion for nonsuit was overruled, and the motion was renewed at the close of all the evidence. The jury answered issues of negligence and contributory negligence in favor of the plaintiffs. From the judgments on the verdicts, both defendants appealed, assigning as error the failure of the court to enter judgment of nonsuit.

*Webster S. Medlin for plaintiffs, appellees.*
*Hartsell & Hartsell, By: L. T. Hartsell, W. T. Joyner for defendant Southern Railway Co., appellant.*
*Carpenter & Webb, By: L. B. Carpenter, John G. Golding for defendant Mrs. J. W. Yates, appellant.*

HIGGINS, J. In considering the appeal of the Southern Railway Company we may dismiss as without significance the allegation that neither warning signs nor signals were placed at the crossing where the accident occurred. The driver of the automobile knew the crossing and stopped for it. Therefore, he had all the notice warning devices could have given him. Evidence is lacking to support the plaintiff's allegation that the speed of the train was in violation of law—either State statute or city ordinance, or that after seeing the car on the track the train crew could have stopped the train in time to avoid the injury. All the evidence is to the effect that the headlights on the engine were properly functioning.

Left for consideration is the allegation that the defendant's train appeared "suddenly without any warning on the part of the defendant Railroad Company, its agents, or servants, either by blowing of a whistle or the ringing of a bell, or in any manner making known its approach, . . . and negligently approached the crossing . . . at a great rate of speed, . . . or without slowing down . . ." The evidence is plenary that the driver heard the whistle before the train came into view. At the time he heard the whistle, and while he was about to enter upon the southbound track, he became excited, slammed on his brakes, choked down and stalled his engine while the automobile was on the track, or so close to it that the train struck it. After the car stopped, three of the occupants, including the plaintiff, reached a place of safety. The plaintiff, however, saw Phyllis Metcalf still in the car, "frozen with fright." Immediately he went to her rescue, succeeded in taking her from the car and pushing her to a place of safety. The plaintiff, having escaped from the car and from the moving train, however, received his injury as the train hurled the car against him.

The evidence did not disclose how far the train moved after striking the car. The defendant's evidence (not in conflict with plaintiff's) indicated the engineer applied his brakes as soon as he saw the car stopped on or near the tracks, and that the train moved about 35 car lengths, approximately 1,600 feet, before it stopped. The evidence is insufficient to show negligence on the part of the Railway Company, *Faircloth v. R. R., ante,* 190, and cases cited; and likewise to raise the question of the railway's last clear chance to avoid the accident after ascertaining the occupants of the car were in a place of danger. *Freight Lines v. Burlington Mills,* 246 N.C. 143, 97 S.E. 2d 850; *Redmon v. R. R.,* 195 N.C. 764, 143 S.E. 829.

This case is governed by the doctrine approved by this Court in the following cases: *Faircloth v. R. R., supra; Jones v. R. R.,* 235 N. C. 640, 70 S.E. 2d 669; *Jeffries v. Powell, Receiver,* 221

N.C. 415, 20 S.E. 2d 561; and cases cited. The evidence was insufficient to take the case to the jury against the corporate defendant. Its motion for judgment of nonsuit should have been allowed.

As to the individual defendant, the jury found that John T. Yates was her agent, and acting in the scope of his agency at the time of the accident. John Yates testified: "My mother actually owned the automobile . . . I had been away approximately a year and a half . . . During that time I considered my permanent address with my mother. . . . It was understood I would drive the car when I came home or any time I came in contact with it . . . On the evening in question I had my mother's permission and consent to drive the automobile." The evidence of ownership and agency, and that the car was maintained for a family purpose was sufficient to require the court to submit the issue to the jury and to warrant the jury in answering it in favor of the plaintiff. *Elliott v. Killian,* 242 N.C. 471, 87 S.E. 2d 903; *Goode v. Barton,* 238 N.C. 492, 78 S.E. 2d 398; *Ewing v. Thompson,* 233 N.C. 564, 65 S.E. 2d 17; *Matthews v. Cheatham,* 210 N.C. 592, 188 S.E. 87.

The evidence disclosed that John T. Yates was familiar with the crossing where the accident occurred. He stopped an undisclosed distance from the crossing and looked both to the north and to the south. Seeing nothing, he thereafter looked only straight ahead until his vehicle was on or near the track. The whistle sounded, he became excited, and, instead of continuing or speeding up, he applied his brakes and stalled his car in the path of the train. Even so, all except Phyllis Metcalf reached a place of safety.

The defendant's agent drove the automobile into a zone of danger, became excited when the danger materialized, and stopped when time remained to have continued to a place of safety. The evidence was sufficient to go to the jury. *Irby v. R. R.,* 246 N.C. 384, 98 S.E. 2d 349; *Beaman v. R. R.,* 238 N.C. 418, 78 S.E. 2d 182; *Dowdy v. R. R.,* 237 N.C. 519, 75 S.E. 2d 639; *Parker v. R. R.,* 232 N.C. 472, 61 S.E. 2d 370; *Coleman v. R. R.,* 153 N.C. 322, 69 S.E. 251.

Remaining to be disposed of is the individual defendant's allegation that the plaintiff was guilty of contributory negligence. By leaving a place of safety, and by entering a place of known danger for the purpose of rescuing Phyllis Metcalf, was the plaintiff guilty of contributory negligence as a matter of law, or does the evidence present the question as one for the jury?

The impulse to give assistance to his companion who was helpless in a place of great danger necessarily was strong in the plaintiff. Her rescue was complete. He missed escape by a very narrow margin. In all probability her life was saved at the cost

of his leg. Would it be fair to say that his injury resulted from his negligence and that no other reasonable inference can be drawn from the evidence in the case? ". . . it is well established that when the life of a human being is suddenly subjected to imminent peril through another's negligence, either a comrade or a bystander may attempt to save it, and his conduct is not subjected to the same exacting rules which obtain under ordinary conditions . . ." *Norris v. R. R.,* 152 N.C. 505, 67 S.E. 1017; *Pegram v. R. R.,* 139 N.C. 303, 51 S.E. 975. ". . . the rule is well settled that one who sees a person in imminent and serious peril through the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life, or serious injury, in attempting to effect a rescue, provided the attempt is not recklessly or rashly made." *Alford v. Washington,* 244 N.C. 132, 92 S.E. 2d 788. Evidence the driver's negligence exposed Phyllis Metcalf to the danger from which the plaintiff rescued her to his own injury was sufficient to go to the jury and to sustain the verdict. Contributory negligence on the part of the plaintiff does not appear as a matter of law. The jury resolved the question in his favor as an issue of fact.

On the appeal of the corporate defendant, the judgment is Reversed.

On the appeal of the individual defendant, there is No error.