L. SNEED HIGH, ADMINISTRATOR, v. ATLANTIC COAST LINE RAILROAD
COMPANY.

(Filed 21 May, 1958.)

**1. Appeal and Error § 51—**

The evidence must be taken in its entirety in determining its sufficiency
to overrule motion for nonsuit entered at the close of all the evidence.

**2. Trial § 20—**

Whether the evidence is sufficient to require its submission to the
jury is a question of law.

**3. Trial § 22a—**

On motion to nonsuit, the court does not pass upon the credibility of
the witnesses or the weight of their testimony, but must take the evi-
dence favorable to plaintiff as true and resolve all conflicts of testimony
in plaintiff's favor.

**4. Railroads § 4— Evidence held sufficient to be submitted to jury on
question of railroad's negligence and not to show contributory negli-
gence as a matter of law.**

The evidence tended to show that defendant railroad company main-
tained a crossing of its tracks by a narrow private road, that the road
made a 90 degree turn about 20 feet from the tracks and crossed the
tracks at right angles, that from the turn to the nearest track was about
20 feet and the grade up to the tracks approximately 20 per cent, that
intestate, who was familiar with the crossing, stopped his car 20 feet from
the crossing and then 5 feet from it, that both intestate and his wife look-
ed and did not see a train, that defendant's south-bound train could have
been seen for only 600 feet from the crossing, that it was coasting 60
miles an hour downgrade, that the engineer failed to blow his whistle
or ring the bell at the whistle post some 800 feet from the crossing, and that
the engine hit the rear of the car just before it had cleared the crossing.
*Held:* The evidence was sufficient to be submitted to the jury on the
issue of the negligence of the railroad company and does not disclose
contributory negligence on the part of intestate barring recovery as a
matter of law.

**5. Negligence § 19c—**

Nonsuit on the ground of contributory negligence may not be entered
unless the testimony tending to prove contributory negligence is so clear
that no other conclusion can be reasonably drawn therefrom.

APPEAL by defendant from *Seawell, J.,* September, 1957 Term,
CUMBERLAND Superior Court.

Civil action to recover damages for wrongful death of plaintiff's
intestate alleged to have been caused by the actionable negligence of
the defendant. Issues of negligence, contributory negligence, and dam-
ages were answered in favor of the plaintiff. From the judgment on
the verdict, the defendant appealed.

HIGH *v*. R. R.

*Sanford, Phillips, McCoy & Weaver, Wood & Spence for defendant, appellant.*

*Clark & Clark By: J. B. Clark, Jr., for plaintiff, appellee.*

HIGGINS, J.   The sole question of law presented by this appeal is whether the evidence, taken in its entirety, was sufficient to survive the defendant's motion for nonsuit entered at the close of all the evidence. *Ward v. Smith*, 223 N.C. 141, 25 S.E. 2d 463; *White v. Lacey*, 245 N.C. 364, 96 S.E. 2d 1; *Murray v. Wyatt*, 245 N.C. 123, 95 S.E. 2d 541.

Whether the evidence is sufficient to require its submission to the jury is a question of law. The court does not pass upon the credibility of the witnesses or the weight of their testimony. "It takes it for granted that the evidence favorable to the plaintiff is true, and resolves all conflict of testimony in his favor." *Bundy v. Powell*, 229 N. C. 707, 51 S.E. 2d 307.

The evidence introduced at the trial disclosed that plaintiff's intestate was killed by defendant's south-bound freight train at a grade crossing just south of Hope Mills in Cumberland County. The accident occurred at seven o'clock, p. m., on May 9, 1955. For more than a year the plaintiff's intestate had been employed as a section hand on the defendant's double track line. He lived in a company house less than one-fourth mile north of the crossing. From the intestate's house and another company house near it, a dirt road (apparently the only outlet) ran south, parallel to the tracks and on the railroad's right of way. The road made an abrupt turn to the left and crossed the tracks at a right angle. From the turn to the nearest track at the crossing was about 20 feet, and the elevation up to the tracks was approximately 20 per cent. The crossing was wide enough for only one car. In driving a car upgrade to the crossing, the hood obstructed the view both of the approach and the tracks so that care was necessary in negotiating the crossing. The defendant built the crossing and maintained it.

From the crossing, the approaching train could be seen for a little more than 600 feet. Beyond that point the approach was concealed by a cut and by a growth of timber. Approximately 200 feet further north around the curve there was a whistle post intended as a warning for those seeking to use the crossing.

The plaintiff, with members of his family, including his wife, attempted to negotiate the crossing when the defendant's train, consisting of 98 freight cars powered by one or more electric units and diesel engines, struck the rear of the car just before it completed the crossing. At the time, the train was drifting at 60 miles per hour and making

very little noise. There was evidence from an employee of the railroad who was sitting on his porch near the whistle post that the whistle did not blow at the post, but did blow an instant before the accident. The evidence was conflicting as to whether the train was late or on time.

According to the wife, who was in the car beside the plaintiff's intestate, he stopped about 20 feet from the track, looked both ways, then moved up the grade until the bumper was about five feet from the west track and stopped a second time. "We looked both ways, we didn't see no train and so we pulled on up on the crossing and started across, that is when . . . we seen the train and that is when it struck us. . . . The train struck the left rear part of the automobile."

The plaintiff's intestate was familiar with the location of the whistle post and had the whistle blown it is a permissible inference the additional warning would have kept him from entering upon the track until the train had passed, or could have caused him to speed up sufficiently to have cleared it ahead of the train. The short distance in which the train could be seen (600 feet), its speed (60 miles per hour), its silence (drifting), and especially the failure to blow the whistle or ring the bell which the whistle post indicated ought to have been done approximately 200 feet before the train came into view, with other attendant circumstances constituted sufficient evidence to go to the jury on the question of defendant's negligence.

The defendant urgently contends even if the evidence be held sufficient on the question of negligence, nevertheless it shows plaintiff's intestate was contributorily negligent as a matter of law. *Parker v. R. R.*, 232 N.C. 472, 61 S.E. 2d 370, and cases there cited. See also, *Bumgarner v. R.R.*, 247 N.C. 374, 100 S.E. 2d 830; *Faircloth v. R.R.*, 247 N.C. 190, 100 S.E. 2d 328; *Jones v. R.R.*, 235 N.C. 640, 70 S.E. 2d 669.

We think the case at bar can be distinguished from those relied on by the defendant in which the driver of the vehicle was held guilty of contributory negligence as a matter of law. In this case the driver's view to the north was limited to approximately 600 feet. The speed of the drifting train, its silent movement, the steep grade from the road to the tracks necessitating low gear and slow movement, the narrow crossing, all serve to emphasize the need for notice which the sounding of the whistle at the post would have given while the speeding train was yet out of sight. The difficulty of the approach required more time than is necessary for an ordinary grade crossing. Nevertheless, without this additional notice the car almost cleared the track and an instant more would, perhaps, have avoided the accident. "A judgment of involuntary nonsuit cannot be rendered on the theory that the plea of contributory negligence has been established . . .

unless the testimony tending to prove contributory negligence is so clear that no other conclusion can be reasonably drawn therefrom." *Bundy v. Powell, supra,* and cases cited; *Dosher v. Hunt,* 243 N.C. 247, 90 S.E. 2d 374.

The wife of the intestate testified she was sitting by her husband; that he stopped the car 20 feet from the crossing and then stopped five feet from it; that both looked and did not see the approaching train. " . . . the court will not sustain a motion for judgment of involuntary nonsuit for the reason plaintiff's evidence tends to show that he failed to keep a proper lookout when the evidence in respect thereto is conflicting." *Marshburn v. Patterson,* 241 N.C. 441, 85 S.E. 2d 683.

This case, on both questions involved—negligence and contributory negligence—falls within that twilight zone which separates cases in which the court may say with assurance that jury questions are presented and those in which with equal assurance it may say the evidence was insufficient. We are inclined to the view that the evidence was sufficient to repel the motions for nonsuit, and in submitting the case to the jury, there was

No Error.