88 So.2d 573

## RESERVE LIFE INSURANCE COMPANY

v.

### Juanita B. WHITTEN.

4 Div. 288.

Court of Appeals of Alabama.

April 3, 1956.

Rehearing Denied May 8, 1956.

F. B. McGill, Opp, and A. R. Powell, Jr., Andalusia, for appellee.

Albrittons & Rankin, Andalusia, for appellant.

PRICE, Judge.

This is a suit on a hospital and surgical expense policy.

The plea was the general issue in short by consent, with leave to present any defense available by special plea and leave to plaintiff to present any matter available by special replication.

It was stipulated on the trial that if plaintiff was entitled to recover at all, she was entitled to recover the sum of $197.95. There was a jury verdict in plaintiff's favor for this amount, and defendant appeals.

The policy was issued by appellant to appellee and other members of her family and was in full force and effect. It provides in pertinent part that the insurer will pay, subject to all provisions and limitations contained in the policy, the benefits provided therein for hospital confinement and other specified expense "(b) resulting from sickness which originates while this policy is in effect and more than fifteen days after the date hereof, hereinafter referred to as such sickness."

"Limited Benefit for Maternity
"Part 2.

"If the Insured, or any member of the Family Group, shall be confined within a hospital as the result of pregnancy, miscarriage or complications therefrom, after this policy shall have been in effect as to such Insured or member of the Family Group for not less than ten months from the date hereof, the Company will pay the Insured for the hospital expense actually incurred, but not to exceed Sixty Dollars ($60.00). If the Insured, or any member of the Family Group, shall be confined at home or in the hospital as the result of childbirth, after this policy shall have been in force with respect to such Insured or member of the Family Group for not less than ten months from the date hereof, the company will pay the Insured the sum of Sixty Dollars ($60.00). The maximum amount for which the Company shall be liable under this Part 2 shall be increased One Hundred Per Cent if the Insured or member of the Family Group shall give birth to twins, or shall have a Caesarian operation.

"Payments made under this Part 2 shall be in lieu of all other benefits under this policy on account of any one pregnancy or childbirth."

Under "Limitations and Exclusions," it provides:

"1. This policy does not cover childbirth, pregnancy or miscarriage, or complications arising therefrom except as provided in Part 2, or hospitalization for nervous or mental disorders, rest cure of alcoholism."

The assignments of error are addressed to the trial court's refusal to grant appellant's request for the general affirmative charge, requested both with and without hypothesis, and the court's denial of appellant's motion for a new trial based on the grounds that the court erred in refusing to give the general affirmative charge; the verdict was not sustained by the great preponderance of the evidence; the verdict was contrary to the law in that no contractual obligation on the part of appellant to pay appellee the money sued for was established by the evidence.

The evidence was uncontroverted that appellant had paid $60 to Mizell Memorial Hospital for the expense of appellee's last pregnancy and delivery in early September, 1951, prior to the surgical operation involved in this suit.

Dr. E. R. McLennan testified he was appellee's physician. On September 25, 1951, he performed on Mrs. Whitten a tubal ligation which is an operation to tie the fallopian tubes to prevent future pregnancy. In her past pregnancy she had had very severe hemorrhages. She had had two miscarriages in which she bled very profusely and which left her as a potential patient in future pregnancies that he felt

might be fatal to her and that it was a necessary operation in the treatment of the patient. To the question, "Would you say then that there was a sickness or an illness existing there at the time that you performed the operation or an abnormal condition necessitating such an operation," the doctor replied: "Well, I would say that it was more of a potential illness," and testified repeatedly that her illness was a potential illness and said if she did not again become pregnant she would have no trouble. The medical report which the doctor filled out and submitted to the insurer contained the following statement: "Mrs. Whitten had a very difficult labor with her last child, which was complicated by severe post-partum hemorrhages. It was felt that the hemorrhages were due to fibrosis of the uterus resulting from seven pregnancies, and further pregnancies would endanger her life."

The doctor testified further that he assumed from the symptom the patient had a fibrosis of the uterus but that he could not say definitely that fibrosis was present since there could be no actual finding of a fibroid tumor unless a microscopic examination is made of a section of the tissue involved, but it was his judgment that a fibrosis condition did exist.

In reply to the question by defense counsel: "Then her condition was this, the diagnosis would be that she either had a potential illness or sickness as differentiated from an actual existing one, or she had the fibrosis resulting from the pregnancies? Have I stated that correctly?" the doctor said, "Yes."

However, the doctor further testified that he would not say positively that the fibrosis came from a pregnancy; that persons who have never been pregnant have fibroid tumors and that it would be impossible to say whether or not the fibrosis condition here was a result of pregnancy, childbirth or miscarriage.

This was all of the evidence in the case.

█ Under the wording of such policies it has been said that:

" 'Sickness' is 'any morbid condition of the body * * * which for the time being hinders and prevents the organs from normally discharging their several functions. (It is) any affection of the body which deprives it temporarily of the power to fulfill its usual functions.' Martin v. Waycross Coca-Cola Bottling Co., 18 Ga.App. 226, 89 S.E. 495, 496. See also, 29 C.J., Sec. 7, p. 280; Milam v. Norwich Union Indemnity Co., 107 W.Va. 574, 149 S.E. 668; Independent Life Ins. Co. of America v. Butler, 221 Ala. 501, 129 So. 466; Black v. Travellers' Ins. Co., 3 Cir., 121 F. 732, 61 L.R.A. 500." National Casualty Co. v. Hudson, 32 Ala.App. 69, 21 So. 2d 568, 570.

It is appellant's insistence that the surgical operation for which the litigated expense was incurred, either resulted from a complication of pregnancy and was thus specifically excluded from the ·policy or from a potential illness or sickness as differentiated from an actual existing one and thus was not covered by the policy, and that the sickness or illness originated and first manifested itself prior to the effective date of the policy.

Appellee urges in brief that the testimony of Dr. McLennan, although uncontroverted, is of such a nature that two inferences can be drawn from it. The first inference favoring appellant's contention that the fibrosis condition was a complication from pregnancy or childbirth. The second inference to be drawn from the doctor's testimony was that the fibrosis condition was not a complication resulting from childbirth or pregnancy but was merely a physiological change in the body of the patient for which no explanation could be given, and that the general affirmative charge was properly refused under the well-settled rule of law that where different inferences can be reasonably drawn from the evidence the general affirmative charge should not be given in favor of either party.

█ We do not agree with appellee's insistence. We think that a determination of the question of the cause of the fibroid condition is unnecessary, because even if

it be assumed that the physician's testimony sufficiently established plaintiff's trouble as an actual existing sickness in the form of a fibroid tumor of the uterus, regardless of whether it was a complication of pregnancy, we are of the opinion his testimony shows conclusively that the operation for which plaintiff is seeking to recover was not performed to relieve any existing condition, but was performed solely for the purpose of preventing a possible future pregnancy and a possible severe hemorrhaging resulting therefrom.

■ Moreover, plaintiff's child was born in early September, 1951. This was her seventh pregnancy. The doctor testified he thought she had one miscarriage between August 11, 1950, (the effective date of the policy) and September of 1951, and that her other five pregnancies would have been prior to that time. As heretofore stated, his testimony was that she had hemorrhaged profusely in two prior miscarriages, one of which, under this testimony, occurred prior to the specified period from the date of the policy. So that, if it should be conceded that plaintiff's hospitalization for which she seeks recovery was occasioned by an actual existing illness instead of a possible future one, we are of the opinion the inference to be drawn from this evidence was that her condition originated, under the terms of the policy, when it became active or manifest itself by the excessive hemorrhaging. National Casualty Co. v. Hudson, supra, and cases cited therein. See also 45 C.J.S., Insurance, § 893, pages 971, 972; Provident Life & Accident Ins. Co. v. Jemison, 153 Miss. 53, 120 So. 180.

■ The burden was on the insured to prove a sickness covered by the policy, General Acc. Ins. Co. v. Hayes, 52 Tex. Civ.App. 272, 113 S.W. 990, within the period specified therein, Murray v. Aetna L. Ins. Co., D.C., 243 F. 285, and, of course, the burden is not met by merely showing an illness originating before the specified period, or a possible future illness.

Taken in the light most favorable to plaintiff, we are of the opinion the evidence fails to bring her disability within the provisions of the policy, and that the defendant was entitled to the general affirmative charge, and for its refusal the judgment must be reversed and the cause remanded.

Reversed and remanded.

### On Application for Rehearing

On application for rehearing counsel for appellee, contends in brief that we are in error in our conclusion that the appellant was entitled to the general affirmative charge, and again urges that "under the two different inferences to be drawn from the testimony of Dr. McLennan," the trial court properly submitted the case to the jury.

We feel that the tendencies of the evidence have been fairly and adequately summarized in our opinion, but in deference to appellee's request the opinion is extended so as to include the excerpts from the testimony from which counsel insists different inferences may be drawn:

"Q. Now if I understand you correctly though she had a fibrosis of the uterus, is that correct? A. I assume that.

"Q. That is not a normal condition, is it? I mean by that that is not the condition of a normal, well woman? A. No.

\* \* \* \* \* \*

"Q. And would you positively say without any question that that fibrosis came from a pregnancy? A. Oh, no.

"Q. You have instances of fibrosis in the uterus without pregnancy? A. Yes, we have fibroid tuma on a person who has never been pregnant at all.

\* \* \* \* \* \*

"Q. And your reason and logic in this instance, if the fibrosis existed, it resulted from the seven pregnancies?

"Mr. Powell: If the Court pleases, he has already answered that.

"The Court: I would like to hear him state again whether or not this fibrosis condition, if it did exist, was attributed to prior pregnancies, or would you say? A. It

could be, but I couldn't say. As I say, there could be a fibroid tuma without pregnancy."

The whole of the Doctor's testimony, including these portions, was considered by us when the case was decided. We adhere to our original decision.

Application overruled.