BILL R. PRICE v. STATE CAPITAL LIFE INSURANCE COMPANY.

(Filed 17 January 1964.)

**1. Insurance § 28—**

    Provision of a policy for benefits if a person covered is confined to a hospital by reason of sickness refers to an existing illness which is the cause

of the hospitalization, and does not cover an operation to prevent future illness.

## 2. Same—

The evidence disclosed that plaintiff's wife had arrested tuberculosis, that she became increasingly nervous and depressed during each successive pregnancy, and that after the delivery of her fourth child her physician was of the opinion she was headed for a post-partum psychosis unless a tubal ligation was performed. *Held:* If the operation was to prevent future illness it was not within the coverage of the hospital policy, but if the post-partum depression was serious enough to be classified as a sickness, the operation was within the coverage, and the issue should be submitted to the jury.

## 3. Same—

Serious emotional depression even though not amounting to insanity, is akin to it, and insanity is generally held to be a sickness within the meaning of a health and accident policy.

## 4. Trial § 22—

Discrepancies in the evidence are for the jury and not the court.

APPEAL by plaintiff from *Sink, E. J.,* at the July 1963 Civil Term of DAVIDSON.

Plaintiff instituted this action upon a policy of hospital insurance to recover $372.75, surgical and hospital expenses incurred when an operation known as a tubal ligation was performed upon his wife. Defendant admitted that the policy in suit was in full force and effect between the parties at the time of the operation; that plaintiff's wife is an "eligible dependent" covered by the policy; and that proof of loss was duly filed. Defendant alleged, however, that hospitalization and surgery for an "elective tubal ligation" was not compensable under the terms of the policy.

By stipulation the parties designated the pertinent portions of the insurance contract. In summary, they provide for surgical and hospital benefits when the surgery is performed by a legally qualified physician upon an insured "as a result of accidental bodily injuries or sickness."

Plaintiff's evidence, viewed in the light most favorable to him, tended to show the following facts: He and his wife have four children between the ages of two and thirteen years. Mrs. Price became increasingly depressed and disturbed emotionally during each pregnancy after her first. During her fourth, she was emotionally unstable throughout the entire pregnancy. She wept continuously, required drugs in order to sleep or eat, and remained in bed for most of the nine months. She narrowly escaped a complete nervous breakdown. Mrs. Price had

twice been in a sanatorium for tuberculosis, the last time being four or five months after the birth of her first child.

Dr. E. L. Jones, Mrs. Price's physician, testified in substance as follows: Mrs. Price wanted the operation performed immediately following the delivery of her fourth child. Ordinarily ligations are done within three days following delivery; however, to be sure that such an operation was necessary, Dr. Jones postponed it for four weeks. She improved but did not recover completely. He came to the conclusion that she was headed for a post-partum psychosis unless the operation was performed. He had treated her for some emotional depression between her third and fourth pregnancies, although it was less severe than that which developed after she became pregnant. In summary, he advised the operation because (1) Mrs. Price continued extremely nervous and he diagnosed her condition as "severe emotional depression"; (2) there was a danger that another pregnancy would activate her arrested tuberculosis; (3) she had four young children who needed her and (4) she had become increasingly nervous following each pregnancy and delivery, and another pregnancy would cause medical debility.

The operation was successfully performed on May 14, 1961—five or six weeks after the delivery of Mrs. Price's fourth child. Since then, she has suffered no emotional disturbance and is now in good health so far as this sympton is concerned. In the opinion of Dr. Jones she would not have recovered completely without the operation.

At the conclusion of plaintiff's evidence, the trial judge allowed defendant's motion for nonsuit and the plaintiff appealed.

*Charles F. Lambeth, Jr., for plaintiff appellant.*

*Allen, Steed & Pullen and William B. Mills by Thomas W. Steed, Jr., for defendant appellee.*

SHARP, J.　Whether plaintiff offered any evidence tending to show that the operation performed upon Mrs. Price was the result of an existing sickness is the question posed by this appeal.

Webster's New International Dictionary, Second Edition, Unabridged, defines sickness: "1. a Diseased condition; illness; ill health. b A disordered or weakened condition in general. 'A great *sickness* in his judgment.' Shak. 2. a A malady; a form of disease . . . ." This definition was approved in *Reserve Life Insurance Company v. Lyle,* Okl. 288 P. 2d 717. This Court has several times quoted, with approval, the following definitions of disease:

". . . . 'an alteration in the state of the human body . . . or of some of its organs or parts interrupting or disturbing the per-

formance of the vital functions, or of a particular instance or case of 'this'; as 'deviation from the healthy or normal condition of any of the functions or tissues of the body'; and as a 'morbid condition of the body'." *Bailey v. Insurance Co.,* 222 N.C. 716, 24 S.E. 2d 614; *McGregor v. Assurance Corporation,* 214 N.C. 201, 198 S.E. 641.

While the words "sickness" and "disease" are technically synonymous, "when given the popular meaning as required in construing a contract of insurance, 'sickness' is a condition interfering with one's usual activities, whereas disease may exist without such result; in other words, one is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected, but is regarded as sick when such diseased condition has advanced far enough to incapacitate him." 29 A. Am. Jur., *Insurance* § 1154; 10 Couch on Insurance 2d § 41:801.

Closely analogous to the instant case is that of *Reserve Life Insurance Company v. Whitten,* 38 Ala. App. 455, 88 So. 2d 573. There suit was brought upon an insurance policy which provided for benefits for hospital confinement "resulting from sickness." A tubal ligation was performed on the plaintiff because she had hemorrhaged very seriously during past pregnancies and another would endanger her life. When asked if an existing illness necessitated the operation, plaintiff's physician testified that the operation was performed to prevent a potential illness; that if plaintiff did not again become pregnant she would have no further trouble. In denying recovery, the Alabama Court said, ". . . . (W)e are of the opinion his (the doctor's) testimony shows conclusively that the operation for which plaintiff is seeking to recover was not performed to relieve any existing condition, but was performed solely for the purpose of preventing a possible future pregnancy and a possible severe hemorrhaging resulting therefrom."

We think it clear that the policy involved herein does not cover an operation to prevent a potential sickness but was intended to include only hospitalization resulting from an actual existing illness. Therefore, if the operation upon plaintiff's wife was performed solely to prevent a future pregnancy, either because it might activate the arrested tuberculosis or cause another emotional disturbance, it clearly was not within the policy coverage. However, if one of the purposes proximately contributing to the decision to perform the operation was to eliminate a post-partum depression serious enough to be classified as a sickness, the operation was covered. The expression "confined to a . . . hospital by reason of . . . sickness," contained in the policy in

suit, connotes an active state of illness or a condition which itself is the cause of hospital confinement. *Reserve Life Insurance Company v. Lyle, supra.*

Certainly during the nine months of her fourth pregnancy, Mrs. Price had an illness connected with, but in addition to, her pregnancy. The evidence of Dr. Jones tended to show that following the birth of the child she improved but did not completely recover. He observed her for one month and came to the conclusion that she was headed for a post-partum psychosis if the tubal ligation was not performed.

A morbid condition of the mind, a deviation from its healthy and normal state, can be a disease or illness as well as a morbid condition of the body. Severe emotional depression, while not necessarily amounting to insanity, is akin to it. It is generally held that insanity is a sickness within the meaning of a health and accident policy. See 29A Am. Jur., *Insurance* § 1154 and 10 Couch on Insurance 2d § 41:802 where the cases are collected.

While there is evidence that a few weeks after the birth of her child Mrs. Price had made a normal recovery and was in good health again, discrepancies in the evidence are for the jury and not the court. *High v. R.R.,* 248 N.C. 414, 103 S.E. 2d 498. The evidence of the attending physician was sufficient to take the case to the jury.

The judgment of nonsuit is

Reversed.