Martha V. GILBERT et al., Appellees,

v.

GENERAL ELECTRIC COMPANY, Appellant.

No. 74–1557.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1975.

Decided June 27, 1975.

Certiorari Granted Oct. 6, 1975. See 96 S.Ct. 36.

Theophil C. Kammholz, Chicago, Ill. (Stanley R. Strauss, Washington, D. C., John S. Battle, Jr., J. Robert Brame, III, Richmond, Va., Vedder, Price, Kaufman, Kammholz & Day, Washington, D. C., and McGuire, Woods & Battle, Richmond, Va., on brief), for appellant.

Ruth Weyand, Washington, D. C. (Winn Newman, Washington, D. C., and Seymour DuBow, Richmond, Va., on brief), for appellees.

Linda Colvard Dorian, Atty., E. E. O. C. (William A. Carey, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg and Charles L. Reischel, Attys., E. E. O. C., on brief), for amicus curiae, U. S. Equal Employment Opportunity Commission.

Ruth Bader Ginsburg, Melvin L. Wulf, Kathleen Peratis, New York City, Wendy Webster Williams, San Francisco, Cal., Peter Hart Weiner, Berkeley, Cal., Averbuck & Hoffman, Oakland, Cal., on brief for amici curiae American Civil Liberties Union and Equal Rights Advocates, Inc.

Mary F. Kelly and Nancy E. Stanley, New York City, on brief for amicus curiae Bellamy, Blank, Goodman, Kelly, Ross & Stanley.

Marcia D. Greenberger, Joseph N. Onek and Lois J. Schiffer, for amici curiae Women's Equity Action League, National Organization for Women and Human Rights for Women, Inc.

Judith Lonnquist, Chicago, Ill., National Vice President for Legal Affairs and Atty., National Organization for Women, as amicus curiae.

Gerard C. Smetana, Jerry Kronenberg, Julian D. Schreiber, Borovsky, Ehrilich & Kronenberg, Chicago, Ill., Milton Smith, Gen. Counsel, and Richard B. Berman, Labor Relations Counsel, Washington, D. C., on brief for amicus curiae The Chamber of Commerce of the United States.

Charles Ryan, Gen. Atty., Clark G. Redick, Atty., F. Mark Garlinghouse, Vice President and Gen. Counsel, American Telephone and Telegraph Co., Thompson Powers, James D. Hutchinson, Ronald S. Cooper, Roger E. Warin and Steptoe & Johnson, Washington, D. C., on brief for amicus curiae The American Telephone and Telegraph Co.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is a class action by certain women employees of the defendant to secure affirmative injunctive relief under Section 2000e–5(f)(3), 42 U.S.C., that childbirth disabilities of women employees of the defendant are compensable under the defendant's employee disability plan which is applicable generally throughout all defendant's plants. Following the disposition of certain procedural motions relating to venue[1] and the propriety of class representation,[2] the District Court proceeded to the merits of the controversy and, in granting relief, held the denial of pregnancy-related disability benefits violative of Title VII of the Civil Rights Act of 1964, as amended.[3] The defendant has appealed, asserting that the exclusion of such disabilities under its employee disability plan is not violative of Title VII and that, in any event, the District Court improperly permitted the action to be maintained as a class action. We affirm.

The legislative purpose behind Title VII was to protect employees from any form of disparate treatment because of race, color, religion, sex or national origin or, as one commentator has stated it, "to make employment decisions sex-blind, as well as colorblind."[4] And that remedial purpose is plainly spelt out in the Act, the sweep of which "extends beyond discrimination in rates of wages," and which proscribes broadly any adverse discrimination by an employer with respect to "compensation, terms, conditions, or privileges of employment" on the basis of sex.[5] "[T]erms [or] conditions, * * * of employment," as used in the Act, include "fringe benefits" such as pension rights and retirement and disability benefits, all of which are now well recognized as "integrally related to the entire wage structure."[6] The Equal Employment Opportunity Commission has so declared in its guidelines[7] issued under the Act. Nor is

1. See *Gilbert v. General Electric Company*, 347 F.Supp. 1058 (D.C.1972).

2. See *Gilbert v. General Electric Company*, 59 F.R.D. 267 (D.C.1973).

3. See *Gilbert v. General Electric Company*, 375 F.Supp. 367 (D.C.1974).

4. Note, *Developments—Title VII*, 84 Harv.L. Rev. 1109, 1175; *Sprogis v. United Air Lines, Inc.* (7th Cir. 1971) 444 F.2d 1194, 1198, *cert. denied* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543.

5. Bernstein & Williams, *Title VII and the Problem of Sex Classifications in Pension Programs*, 74 Colum.L.Rev. 1203, 1214–5 (1974).

6. *Ibid.*, p. 1214; *Rosen v. Republic Service Electric and Gas Company* (3d Cir. 1973) 477 F.2d 90, 95; *Inland Steel Co. v. National Labor Relations Board* (7th Cir. 1948) 170 F.2d 247, 251, *affirmed* 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925.

7. "(a) 'Fringe benefits,' as used herein include medical, hospital, accident, life insurance and retirement benefits; profit-sharing and bonus plans; leave; and other terms, conditions, and privileges of employment.

"(b) It shall be an unlawful employment practice for an employer to discriminate between men and women with regard to fringe benefits." 29 C.F.R. § 1604.9.

* * * * * *

"(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health plan available in connection with employment. Written and unwritten employment policies and practices involving mat-

the defendant in any position to contend that "fringe benefits" are not included in "conditions of employment," for it has stated in its 1966 Annual Report:

> "Compensation at General Electric is interpreted broadly to include not only monetary returns but also the value of benefit programs."

It would seem necessarily to follow, therefore, that any limitations or restrictions on disability benefits imposed by the defendant under its program of employee benefits which may be found to be sex-based would represent a discrimination in the "compensation, terms, conditions, or privileges of employment" within the proscription of the Act.

■ Pregnancy-related disabilities are, however, excluded from the disability benefits available under the defendant's employee benefit program. It is specifically this restriction upon the benefits available under the program which has prompted this controversy and which the plaintiffs seek by their action to invalidate. Pregnancy is a condition unique to women and a basic characteristic of their sex. A disability program which, while granting disability benefits generally, denies such benefits expressly

for disability arising out of pregnancy, a disability possible only among women, is manifestly one which can result in a less comprehensive program of employee compensation and benefits for women employees than for men employees; and would do so on the basis of sex. "[W]omen, to be treated without discrimination [under the Act], must be permitted to be women," and this means a right to be "women" without being burdened by any discrimination in employment benefits, whether in wages or in fringe benefits, on account of characteristics peculiar to their sex.[8] It is of no moment that an employer may not have deliberately intended sex-related discrimination; the statute looks to "consequences," not intent.[9] Any discrimination, such as that here, which is "inextricably sex-linked" in consequences and result, is violative of the Act.[10] In so concluding, we are following the opinion reached by most of the Courts which have considered the issue[11] and are giving effect to the construction of the Act as adopted by the Equal Employment Opportunity Commission in its guidelines, to which the courts are directed to give "great deference" in applying the Act.[12]

ters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities." 29 C.F.R. § 1604.-10(b).

8. Note, 1968 *Duke L. Journal* 671, 721–2.

9. *Griggs v. Duke Power Co.* (1971) 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158.

10. Note, *Developments—Title VII*, 84 *Harv.L. Rev.* 1109, 1175.

11. *Communication Workers of America v. American Telephone & Telegraph Co.* (2d Cir. 1974) 513 F.2d 1024; *Wetzel v. Liberty Mutual Insurance Co.,* (3d Cir. 1975) 511 F.2d 199; *Holthaus v. Compton & Sons* (8th Cir. 1975) 514 F.2d 651; *Farkas v. South Western City School District* (6th Cir. 1974) 506 F.2d 1400; *Vineyard v. Hollister School District* (D.C.Cal. 1974) 64 F.R.D. 580; *Satty v. Nashville Gas*

Co. (D.C.Tenn.1974) 384 F.Supp. 765; *contra Newmon v. Delta Air Lines, Inc.* (D.C.Ga.1973) 374 F.Supp. 238, *affirmed* 5 Cir., 475 F.2d 768.

12. The guidelines issued by the Equal Employment Opportunities Commission, which by law is charged with the enforcement of Title VII and the guidelines of which are said to be entitled to "great deference" in the construction of the Act, *Phillips v. Martin Marietta Corp.* (1971) 400 U.S. 542, 545, 90 S.Ct. 496, 27 L.Ed.2d 613; *Griggs v. Duke Power Co., supra* (401 U.S. p. 434, 91 S.Ct. 849), state specifically that "pregnancy benefits" are within the protection of the Act.

It may be, as the defendant strenuously argues, that the Commission had earlier indicated an opinion contrary to that presently reflected in its guidelines. The defendant urges that this waffling by the Commission renders the present guidelines poor guides to a construction of the Act and that we should look to the earlier opinions of the Commission for guidance—or, at least, should give minimal weight to the Commission's guidelines. This argument was pressed on the Court in *Wetzel v. Liberty Mutual Insurance Co., supra,* and

The defendant insists, however, that this pregnancy related disability exclusion provision in its plan cannot be deemed discriminatory since its plan only offers benefits *during sickness* and pregnancy confinement cannot be regarded as a sickness. Its basis for arguing that pregnancy confinement is not a sickness is that such disability is "voluntary." The plan, by its provisions, covers disabilities resulting from non-occupational sickness and accident. It incorporates no definition of either "disability" or "sickness," though it does state that "non-occupational" means "any sickness or injury not arising out of or in the course of employment and not entitling you or a covered dependent to benefits under any Workmen's Compensation or Occupational Disease Act." While a number of decisions, relying on this idea of voluntarism, has, particularly in the construction of insurance contracts, refused to characterize childbirth as a sickness,[13] the rule generally followed in labor arbitration cases is to equate pregnancy disability and sickness and to find an employee entitled to the same disability benefits in pregnancy confinement as in the case of any other disability under an employee sickness benefit program. *See Middleton Board of Education*, 56 LA 830 (1971); *National Lead Co.*, 18 LA 528 (1952); *Republic Steel Corp.*, 37 LA 367 (1961).[14] Under the circumstances, it would seem that whether pregnancy disability was within the coverage offered by the plan would be an issue that would turn largely on the construction of the plan as followed by the defendant itself. The record appears clear that, other than for childbirth disability, the defendant had never construed its plan as eliminating *all* so-called "voluntary" disabilities. It has, as the District Court stated, applied its plan to "*all* disability, including cosmetic surgery, disabilities arising from attempted suicides, etc." except those occurring during childbirth.[15] In short, the defendant raises this defense of "voluntarism" only against a disability that is unique to women and disregards it in connection with any claim for disability submitted by male employees. Whatever facile plausibility there might be to the argument that its plan does not cover "voluntary" disabilities accordingly disappears in the face of the manner in which the defendant itself has construed and applied its plan.

The main thrust of the defendant's argument in this Court, however, is that the recent decision in *Geduldig v. Aiello* (1974) 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256, authoritatively determined that, contrary to the conclusion of the District Court below and the guidelines of the Commission, disparity in treatment between pregnancy-related and other disabilities cannot be classified as sex discrimination prohibited under either the Equal Protection Clause or Title

---

was effectively answered, in our opinion, by the decision of the Court in that case. It has, also, been suggested in a Note, *Current Trends in Pregnancy Benefits—1972 EEOC Guidelines Interpreted*, 24 DePaul L.Rev. 127, that the guidelines were improperly issued and are invalid. All of this, however, is beside the point as we see it. We are of the opinion, as was the District Court, that the guidelines, as presently promulgated, are merely expressive of what is the obvious meaning and purpose of the Act. We entertain no doubt that it was the legislative purpose in enacting Title VII to prohibit any disparity of treatment in compensation and conditions of employment between men and women and this included any disparity that might be sex-related in fringe benefits. *And this would be our opinion, whatever might be the language of the Commission's guidelines.*

**13.** *Mutual Benefit Health & Acc. Ass'n. v. United Cas. Co.* (1st Cir. 1944) 142 F.2d 390, 394, *cert. denied* 323 U.S. 729, 65 S.Ct. 65, 89 L.Ed. 585; *Price v. State Capital Life Insurance Company* (1964) 261 N.C. 152, 134 S.E.2d 171, 173.

**14.** *See, also, Wetzel, supra*, where the Court, in dismissing a similar claim made in a case like the present one, pointed out that disabilities resulting from voluntary acts, *i. e.*, done with full knowledge of potential disability, cover a wide range, as the Court observed, since "[d]rinking intoxicating beverages, smoking, skiing, handball and tennis are all types of activities in which we could sustain harm."

**15.** 375 F.Supp., p. 381.

VII. We do not read *Aiello* as so holding as applied to an action under Title VII. Nor has it been so read in the two recent Circuit decisions, which have faced directly this problem.[16] *Aiello* dealt with a constitutional attack under the Equal Protection Clause on a *legislatively* created social welfare program for private employees in which a differentiation between pregnancy-related and other disabilities was made. In that context the Court applied the customary standards in testing legislation under the Equal Protection Clause and held that, "[A]bsent a showing that distinctions involving pregnancy are mere pretexts designed to effect *an invidious discrimination* against the members of one sex or the other, *lawmakers are constitutionally free* [under the Fourteenth Amendment] to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis * * *."[17] (Italics added)   In line with this, it added in note 20[18] of the opinion, that not "every legislative classification concerning pregnancy is a sex-based classification like those considered in *Reed, supra,*[19] and *Frontiero, supra.*"[20] In essence, its holding was simply that a legislative classification incorporating a pregnancy-childbirth classification was "rationally supportable" in a social welfare program under the Fourteenth Amendment and that it did not amount to an "invidious discrimination" under the Equal Protection Clause. And this was all that was required to sustain the legislation against an Equal Protection assault. It should be noted, perhaps parenthetically, that the opinion in *Aiello* did not declare that the distinction in disability benefit rights in that case between males and females, a distinction which excluded pregnancy-related disabilities, was not discriminatory. In fact, the language of

---

**16.** *Communication Workers of America v. American Telephone & Telegraph Co., supra;* *Wetzel v. Liberty Mutual Insurance Co., supra.* Although *Aiello* is not discussed in *Holthaus v. Compton & Sons, supra,* its inapplicability to a Title VII case is implicit in the Court's decision.

**17.** Note 20 at p. 496, 94 S.Ct. at p. 2492.

The point of difference in the majority and dissenting opinions in *Aiello* was in identifying the standard to be used in testing the "gender-based" classifications—whether it should be the test of "rationally supportable," as adopted by the majority opinion, or what has been described as the "two-tier" test of "strict scrutiny" and "compelling necessity," as urged in the dissenting opinion, a test which, as Chief Justice Burger in *Dunn v. Blumstein* (1972) 405 U.S. 330, at pp. 363–4, 92 S.Ct. 995, at p. 1013, 31 L.Ed.2d 349, observed in his dissenting opinion, "no state law has ever satisfied * * *." We concluded in *Eslinger v. Thomas* (4th Cir. 1973) 476 F.2d 225, 230–1, that the proper equal protection test, in cases of sex discrimination, was whether the classification had "a 'fair and substantial' relation between the basis of the classification and the object of the classification." *Kahn v. Shevin* (1974) 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189, decided just two months before *Aiello,* employed this test in passing on an equal protection claim dealing with sex discrimination. The Court did make some reference in that case to the fact that the statute under review was a tax statute but such comment has been char-

acterized as a "a smokescreen." Note, *Kahn v. Shevin and the "Heightened Rationality Test": Is the Supreme Court Promoting a Double Standard in Sex Discrimination Cases?* 32 *Wash. & Lee L.Rev.* 275, 288. In *Weinberger v. Wiesenfeld* (1975) 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514, Justice Brennan, who had dissented in both *Aiello* and *Kahn* on the ground that the "two-tier" standard of "strict scrutiny" and "compelling necessity" applied in sex-related cases under the Equal Protection Clause, apparently recognized that the standard adopted by the majority in *Aiello* and *Kahn* and accepted by us earlier in *Eslinger,* had been established and, in his opinion for an unanimous Court, he found the statutory classification invalid because it was "entirely irrational." For a discussion of this question, *see,* Note, 32 *Wash. & Lee L.Rev.* 275; Gunther, *In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 *Harv.L.Rev.* 1 (1972); Bartlett, *Pregnancy and the Constitution: The Uniqueness Trap,* 62 *Cal.L.Rev.* 1532, at pp. 1538–40 (1974); Note, *Geduldig v. Aiello,* 75 *Col.L.Rev.* 441 (1975); Note, *Kahn v. Shevin—Sex: A Less-Than-Suspect Classification,* 36 *U.Pitt.L.Rev.* 584 (1974); Note, *Geduldig v. Aiello,* 52 *J. of Urban L.* 591 (1974).

**18.** At p. 496, 94 S.Ct. at p. 2492.

**19.** *Reed v. Reed* (1971) 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225.

**20.** *Frontiero v. Richardson* (1973) 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583.

the Court indicates rather clearly that the Court considered the differentiation discriminatory. What it concluded was, as we have said, that such discrimination was not "invidious" and was not without a rational relationship to the objective of the legislature in establishing the social welfare program under review.

In this case, on the contrary, the issue is not whether the exclusion of pregnancy benefits under a social welfare program is "rationally supportable" or "invidious" but whether Title VII, the Congressional statute, in language and intent, prohibits such exclusion. Accordingly, as the Court in *Wetzel v. Liberty Mutual Insurance Co., supra*, aptly observed, "our case is one of statutory interpretation rather than one of constitutional analysis." There is a well-recognized difference of approach in applying *constitutional* standards under the Equal Protection Clause as in *Aiello* and in the statutory construction of the "sex-blind" mandate of Title VII. To satisfy constitutional Equal Protection standards, a discrimination need only be "rationally supportable" and that was the situation in *Aiello,* as well as in *Reed* and *Frontiero.* The test in those cases was legislative reasonableness. Title VII, however, authorizes no such "rationality" test in determining the propriety of its application. It represents a flat and absolute prohibition against all sex discrimination in conditions of employment.[21] It is not concerned with whether the discrimination is "invidious" or not. It outlaws *all* sex discrimination in the conditions of employment. It authorizes but a single exception to this statutory command of non-discrimination and that is a narrow one[22] which, to be upheld, requires a finding that it is "necessary to the safe and efficient operation of the business." *Robinson v. Lorillard Corporation* (4th Cir. 1971) 444 F.2d 791, 798, *cert. dis.* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655. The defendant makes no claim for relief under this exception.[23] Its denial of pregnancy-related disability from the application of its employee disability benefit program, in our opinion, falls clearly within the prohibitions of Title VII and *Aiello* confers no immunity for such denial. The District Court properly so held.

We find equally without merit the contention of the defendant that this class action falls within subsection (b)(3)

21. 42 U.S.C. § 2000e–2.

22. The EEOC guidelines provide that "the bona fide occupational qualification exception as to sex should be interpreted narrowly." 29 C.F.R. § 1604.2(a) (1972). The guidelines specifically reject the following as justifiable discrimination under the "bona fide occupational qualification" rubric: refusal to hire a woman based on assumptions about the "comparative employment characteristics of women in general" (for example, the assumption that women's turnover rates are higher than those of men); refusal to hire an individual based on sexual stereotypes; refusal to hire because of client or co-worker preferences. *Id.* § 1604.-2(a)(1)(i)–(iii). The only situation in which the Commission will allow sex as a bona fide qualification is "where it is necessary for the purpose of authenticity or genuineness" (for example, a female role in a motion picture). *Id.* § 1064.2(a)(2). * * *" This construction accords with our own decision in *Robinson.*

23. While the defendant disclaimed consistently any intention of asserting a business necessity defense under Section 703(e) of the Act, it did offer considerable evidence on the "business considerations" which prompted its exclusion of childbirth disability in its employee benefit plan. It regarded this evidence as "material," to quote its own brief, "not because of a Section 703(e) reason, but rather because it shows the absence of pretextual motivation under the *Geduldig, supra,* rationale." [p. 12, Reply Brief] Since we do not consider *Geduldig* in point here, it is unnecessary to consider this evidence. It might be noted, though, that these same "business considerations" were marshalled in opposition to the enactment of the Equal Rights Law one year before the enactment of Title VII and were discarded by the Congress. *See* U.S.Code Cong. & Admin. News, 88th Cong., 1st Sess., 1963, pp. 687 and 689. Since the two Acts (*i.e.,* the Equal Pay Law and Title VII as directed at sex discrimination) had a similar purpose, Congress no more regarded "business considerations," that is, claimed greater absenteeism by women employees, etc., as a basis for escape from the prohibitions of Title VII than it did for the Equal Pay Law. *See,* Note, 84 *Harv.L.Rev., supra,* at p. 1174. As to whether there is any basis in fact for those claims of "business considerations," *see Bartlett, supra,* at pp. 1158–9.

of Rule 23, compelling compliance with the requirement of personal notice as held in *Eisen*.[24] This is not a (b)(3) action; it is an action in equity for injunctive relief and falls within the mold of subsection (b)(2), as the District Court properly ruled. The notice requirements imposed by the District Court were adequate for an action under subsection (b)(2). *Robinson v. Lorillard Corp., supra* ; Note, 39 F.R.D. 69 at 102.

The judgment appealed from is accordingly affirmed.

*Affirmed.*[25]

WIDENER, Circuit Judge (dissenting):

I respectfully dissent from the majority opinion that the exclusion of pregnancy related disability from the application of an employee disability benefits program is prohibited by Title VII, 42 U.S.C. § 2000e et seq.

I think such a holding is precluded by the decision of the Supreme Court in *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). Although that case involved an action brought under the equal protection clause of the Fourteenth Amendment and not Title VII, the decision should control here.

42 U.S.C. § 2000e–2 provides in part that it shall be an unlawful employment practice for an employer to discriminate against an individual because of the individual's sex. The inquiry in this case must therefore focus initially on whether the exclusion of pregnancy related disability from the disability benefits plan is sex discrimination. If it is not sex discrimination, then, regardless of what test is applied, there is no Title VII violation.

The court, in *Geduldig,* held that the exclusion of pregnancy from a state disability insurance plan for employees of private employers was not a classification that would support a finding of sex discrimination, since it was not shown

that distinctions involving pregnancy were mere pretexts designed to effect an invidious discrimination against one sex. 417 U.S. at 496–97, n. 20, 94 S.Ct. 2485. Such a showing was not made here.

The Court said of the California insurance plan, "There is no evidence in the record that the selection of the risks insured by the program worked to discriminate against any definable group or class in terms of the aggregate risk protection derived by that group or class from the program. There is no risk from which men are protected and women are not. Likewise, there is no risk from which women are protected and men are not." *Geduldig,* 417 U.S. at 496–97, 94 S.Ct. at 2492. In a footnote, 417 U.S. at 496, n. 20, 94 S.Ct. at 2492 in reply to the dissenting opinion, the Court explained that the pregnancy exclusion is a "far cry from cases like *Reed* . . . and *Frontiero* . . . involving discrimination based upon gender as such," and most importantly continued: "The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical condition—pregnancy—from the list of compensable disabilities." 417 U.S., n. 20, p. 496, 94 S.Ct. p. 2492. And later in the same footnote appears the flat statement which should control our case: "The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis." 417 U.S., n. 20, p. 497, 94 S.Ct. p. 2492.

Absent a showing of sex discrimination, Title VII, even if its reach were broader than the equal protection clause, would not render unlawful a pregnancy exclusion such as that involved here. Since the Supreme Court has held, for precisely the same exclusion, there is a "lack of identity between the excluded disability and gender as such," the exclusion should no more support a finding of

**24.** *Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732.

**25.** Since the Supreme Court has granted certiorari in *Wetzel v. Liberty Mutual Insurance*

*Co., supra, see* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), the District Court should perhaps defer further proceedings herein until after *Wetzel* is decided.

discrimination under Title VII than under the equal protection clause. And since, as the Court says, the exclusion is "merely" the removal of "one physical condition—pregnancy—from the list of compensable disabilities," no reason appears why a collective bargaining agreement may not lawfully do by contract what a state may do by legislation.

But, in this circuit, the reach of Title VII is not broader than that of the Fourteenth Amendment. We have held that "the test of validity under Title VII is not different from the test of validity under the fourteenth amendment." *United States v. Chesterfield County School Dist., S. C.*, 484 F.2d 70, 73 (4th Cir. 1973).[1] Unless this court intends to alter its position as just above stated, it is required to reverse the decision below because of the decision of the Supreme Court in *Geduldig*. If the test is "not different," there can be no justification for the finding of discrimination here.

Additional reasons for my disagreement are the illogical results bound to follow. For example: a state's disability benefit plan for its own employees covered by Title VII, 42 U.S.C. § 2000e(b), would, under our holding, not be allowed to exclude pregnancy from its coverage. However, such an exclusion could be made freely in a state plan for employees of private employers such as that in *Geduldig*. I fail to see the justification for the inconsistency.

I grant the majority opinion is most persuasively written. Nevertheless, after many readings, I am left with the impression that, read as a whole, it very nearly follows the rationale of the dissenting justices in *Geduldig* which has been rejected by a majority of the court as emphasized in footnote 20 above referred to.

In sum, I am of opinion *Geduldig* was written with an eye to Title VII cases

certain to come, not in a vacuum and not with self imposed blinders, and came to the only result logically possible when we consider that the Court must be the even handed arbiter in all cases, not only those involving equal protection. I even assume that the result in *Geduldig* may not be as socially desirable as the minority there argues for, and the majority here obtains. But social desirability is not the aim. The aim is to construe the statute in view of applicable precedent and legislative purpose. And Title VII seeks to equalize opportunity, not create an advantage for either men or women. If Congress wishes to legislate in favor of pregnant women, I see no constitutional impediment,[2] legislatures have made less rational classifications for centuries. But, I submit, Congress did not so undertake in Title VII.

---

1. Indeed, the very opinion of the district court affirmed here indiscriminately cites equal protection and Title VII cases in support of its position. That the rule in this circuit as recited from the *Chesterfield County* case is a widespread practice is pointed out in a comment in 75 Col.Law Review, 441, 464, 467 (1975).

2. See *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975), and *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).