**Karen CONDIT and Mary E. Oravec, Appellants,**

**v.**

**UNITED AIR LINES, INC., Appellee,**

**Equal Employment Opportunity Commission, Amicus Curiae.**

**No. 79–1200.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1980.

Decided Sept. 10, 1980.

Wendy S. White, Washington, D. C. (Martin J. Flynn, Shea & Gardner, Washington, D. C., on brief), for appellants.

Vella M. Gink, E. E. O. C., Washington, D. C. (Issie L. Jenkins, Acting Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Lutz Alexander Prager, Marilyn S. G. Urwitz, E. E. O. C., Washington, D. C., on brief), for amicus curiae.

Kenneth A. Knutson, Chicago, Ill. (Joseph A. Rafferty, Jr., Washington, D. C., Earl G. Dolan, Chicago, Ill., on brief), for appellee.

Before FIELD, Senior Circuit Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

FIELD, Senior Circuit Judge:

This case, involving alleged sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* is before us for the second time, we

having previously affirmed the district court's denial of relief to plaintiffs on one of their claims.

The alleged discriminatory actions occurred during the year 1972, at which time United Air Lines, Inc., (United) had in effect a policy with respect to stewardesses who became pregnant. This policy, which stemmed from the collective bargaining agreement between United and the Air Line Pilots Association, was stated in the agreement as follows:

A stewardess shall, upon knowledge of pregnancy, discontinue flying. Upon request, the Company shall grant such stewardess a maternity leave of absence. Such stewardesses must be available to return to active service as a stewardess within ninety (90) days following date of delivery unless additional time is deemed necessary by the Company's medical examiner. In no case shall such period to return exceed six (6) months. Return to active service is contingent on passing a Company physical examination. Such stewardess shall retain and accrue seniority during the period of the leave and she shall not be eligible for sick leave benefits for time lost for pregnancy.[1]

In July of 1972, Karen Condit, a United stewardess, reported to her supervisor that she was pregnant and in accordance with the foregoing policy was placed on maternity leave. In May of 1973 when her mandatory leave was about to expire Condit resigned from her employment. In October of 1972, another United stewardess, Mary E. Oravec, reported that she was pregnant and was also placed on maternity leave. After the termination of her pregnancy Oravec resumed her employment as a stewardess with United and was working in that capacity at the time of this litigation.

On about January 4, 1973, Condit filed a charge of sex discrimination with the Equal Employment Opportunity Commission, alleging that the policy of United in regard to maternity leave and disability coverage for pregnant stewardesses violated Title VII. Pursuant to a "right to sue" letter Condit filed her action in the Eastern District of Virginia on May 7, 1974. Count one of the complaint challenged the mandatory leave policy and count two challenged the policy of not paying sick leave or disability benefits to pregnant stewardesses. In October of 1972, Oravec, having received a "right to sue" letter, filed an action against United and was permitted to intervene in the Condit case as a party plaintiff. Air Line Pilots Association was originally named as a defendant in this action but was later dismissed as a party to the suit by stipulation.

Commencing in September of 1974, both parties engaged in extensive pretrial discovery, and on January 15, 1975, the district court conducted a formal pretrial hearing. As of that date, the issue of the non–payment of disability benefits to pregnant employees was pending before this court in the case of *Gilbert v. General Electric*, and, accordingly, the district court deferred a ruling on that issue pending our disposition of *Gilbert*. On June 27, 1975, we filed our opinion in that case, holding that the denial of disability payments was violative of Title VII. *Gilbert v. General Electric*, 4th Cir., 519 F.2d 661. Relying upon our decision in *Gilbert*, Condit and Oravec moved for summary judgment on count two on July 11, 1975. However, in view of the grant of

---

1. The maternity leave policies in effect since 1968 and subject to challenge in this litigation were recently changed in the face of another action against United, *United Air Lines, Inc. v. State Human Rights Appeal Board*, 44 N.Y.2d 648, 407 N.Y.S.2d 1027, 379 N.E.2d 596, *cert. denied*, 439 U.S. 982, 99 S.Ct. 571, 58 L.Ed.2d 653 (1978). That proceeding involved a challenge to the mandatory leave policy by two United stewardesses domiciled in New York. The challenge was brought under New York's Human Rights Law, and United's forced leave policy was held to be unlawful. As a result of the New York case, United was compelled to change its policy and allow pregnant stewardesses domiciled in New York to work until the 20th week of pregnancy, and to continue working through the 28th week of pregnancy, unless disqualified after a medical examination. After certiorari was denied, United determined to apply the New York maternity policy to all United stewardesses. The pregnancy exclusion policy also has been changed as a result of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k).

certiorari in *Gilbert*, the district court deferred ruling on the plaintiffs' motion pending the action of the Supreme Court.

In October of 1975 the district court commenced trial on count one of the complaint involving the mandatory leave requirement, and on September 3, 1976, the court filed a memorandum opinion and order in which it held that the mandatory leave policy of United constituted a bona fide occupational qualification under Section 703(e) of Title VII, 42 U.S.C. § 2000e–2(e). Upon appeal we held that the ruling of the district court was based upon findings of fact which were not clearly erroneous and, accordingly, the judgment was affirmed. *Condit v. United Air Lines, Inc.*, 4th Cir., 558 F.2d 1176 (1977). The plaintiffs petitioned the Supreme Court for a writ of certiorari which was denied on March 20, 1978.[2]

Meanwhile, on December 7, 1976, the Supreme Court decided *General Electric v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343, holding, in essence, that the non–payment of disability benefits to pregnant employees did not constitute sex discrimination under Title VII. In the light of this development the plaintiffs herein filed a motion in the district court asking leave to withdraw their motion for summary judgment as to count two. After some delay, on November 20, 1978, United moved for summary judgment on count two, basing its motion upon the Supreme Court's decision in *Gilbert*, as well as its subsequent decision in *Nashville Gas Co. v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977). By memorandum opinion and order filed on January 22, 1979, the district court denied the plaintiffs' summary motion and granted the motion of the defendant for summary judgment on count two. In doing so, the court recognized *Gilbert* and *Satty* as controlling and, additionally, held that the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), enacted by Congress on October 31, 1978, should not be applied retroactively to this case.

We agree with the district court that *Gilbert* and *Satty* support the conclusion that United's policy of withholding sick leave and disability benefits from stewardesses on maternity leave was not violative of Section 703(a)(1) of Title VII. *Gilbert*, of course, involved a sickness and accident insurance plan for all employees which excluded pregnancy–related disabilities from coverage, and the Court held that such an exclusion was not a *per se* violation of Title VII, stating:

> As there is no proof that the package is in fact worth more to men than to women, it is impossible to find any gender–based discriminatory effect in this scheme simply because women disabled as a result of pregnancy do not receive benefits; that is to say, gender–based discrimination does not result simply because an employer's disability–benefits plan is less than all–inclusive.

429 U.S., at 138–139, 97 S.Ct. at 409. *Satty* narrowed the contours of *Gilbert* to some degree, holding that the denial of accumulated seniority to female employees returning from pregnancy leave violated Section 703(a)(2). The Court noted:

> We held in *Gilbert* that § 703(a)(1) did not require that greater economic benefits be paid to one sex or the other "because of their differing roles in 'the scheme of human existence,'" 429 U.S., at 139 n. 17, 97 S.Ct., at 409 n.17. But that holding does not allow us to read § 703(a)(2) to permit an employer to burden female employees in such a way as to deprive them of employment opportunities because of their different role. (Footnote omitted)

434 U.S., at 142, 98 S.Ct., at 351. The Court, however, upheld the practice of denying sick–leave pay to employees disabled by pregnancy, observing:

> On the basis of the evidence presented to the District Court, petitioner's policy

---

**2.** A different result on the mandatory leave requirement was reached by a majority of the en banc court in *Burwell v. Eastern Air Lines*, 633 F.2d 361 (4 Cir.1980). The court in that case, however, recognized and approved the rationale of the panel decision in *Condit. See* concurring and dissenting opinion of Judge Butzner, at 373.

of not awarding sick–leave pay to pregnant employees is legally indistinguishable from the disability–insurance program upheld in *Gilbert.* As in *Gilbert,* petitioner compensates employees for limited periods of time during which the employee must miss work because of a non–job–related illness or disability. As in *Gilbert,* the compensation is not extended to pregnancy–related absences. We emphasized in *Gilbert* that exclusions of this kind are not *per se* violations of Title VII: "[A]n exclusion of pregnancy from a disability–benefits plan providing general coverage is not a gender–based discrimination at all." 429 U.S., at 136, 97 S.Ct. at 408. Only if a plaintiff through the presentation of other evidence can demonstrate that exclusion of pregnancy from the compensated conditions is a mere " 'pretex[t] designed to effect an invidious discrimination against the members of one sex or the other' " does Title VII apply. *Ibid.*

434 U.S., at 143–144, 98 S.Ct., at 352.

■ The plaintiffs argue that the history of United's treatment of stewardesses supports the conclusion that the exclusion of benefits for pregnancy is a pretext for unlawful sex discrimination. This history "may be deemed relevant by the trier of fact in deciding whether [defendant's] sick-leave plan was such a pretext. But it most certainly does not require such a finding by a trier of fact, * * *." *Nashville Gas Co. v. Satty, supra,* 434 U.S., at 145, 98 S.Ct., at 353. A similar contention was rejected by the District Court in *Burwell v. Eastern Air Lines, Inc.,* 458 F.Supp. 474 (E.D.Va.1978). In upholding Eastern's policy of denying disability benefits and sick-leave pay to pregnant flight attendants, Judge Merhige observed:

> [R]eliance solely on Eastern's general history of discrimination against female flight attendants is insufficient to demonstrate unlawful pretext with respect to a specific policy.[3]

458 F.Supp., at 492.

While the plaintiffs made no allegations of pretextual conduct in their complaints, their argument on this point was advanced with respect to the mandatory leave issue. This contention was considered by the district court, and based upon the pleadings, exhibits and discovery material, we cannot say that the court erred in declining to accept the plaintiffs' argument on this point.[4]

■ Finally, we agree with the defendant that the "Pregnancy Discrimination Act", Public Law 95–555,[5] enacted while this suit was pending should not be applied to this case. While the plaintiffs argue that the Act should be applied under the principle of *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), it occurs to us that they are, in fact, seeking retroactive operation of

3. The plaintiffs in *Burwell* did not appeal from these adverse rulings of the district court.

4. The plaintiffs place considerable reliance upon the case of *deLaurier v. San Diego Unified School Dist.,* 588 F.2d 674 (9 Cir. 1978), in which the court found that the accumulated sick–leave constituted part of the accrued compensation for the employees. In *Maclennan v. American Airlines, Inc.,* 440 F.Supp. 466, 472 (E.D.Va.1977), the court rejected "plaintiffs' contention that these benefits are somehow an integral part of an employee's compensation." Similarly, under United's policy, sick leave is solely a fringe benefit and cannot be characterized as compensation.

5. The operative portion of Public Law 95–555 was codified in 42 U.S.C. § 2000e as follows: (k) The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment–related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise. This subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion: *Provided,* That nothing herein shall preclude an employer from providing abortion benefits or otherwise affect bargaining agreements in regard to abortion.

this law to impose liability upon United growing out of activities which occurred in 1972, some seven years prior to the Act. Public Law 95–555 was enacted by Congress on October 31, 1978, and with respect to the effective date provided as follows:

Sec. 2.(a) Except as provided in subsection (b), the amendment made by this Act shall be effective on the date of enactment.

(b) The provisions of the amendment made by the first section of this Act shall not apply to any fringe benefit program or fund, or insurance program which is in effect on the date of enactment of this Act until 180 days after enactment of this Act.

92 Stat. 2076, [1978] U.S.Code Cong. & Admin.News, p. 4749.

There is nothing to indicate that the amendment should have retroactive application. To the contrary, section 2(b) expressly provides that it shall not apply to any fringe benefit program in effect on the date of enactment until 180 days thereafter. On this point the House Report states:

As the *Gilbert* decision permits employers to exclude pregnancy–related coverage from employee benefit plans, H.R. 6075 provides for transition period of 180 days to allow employees to comply with the explicit provisions of this amendment. It is the committee's intention to provide for an orderly and equitable transition, with the least disruption for employers and employees, consistent with the purposes of the bill.

[1978] U.S.Code Cong. & Admin.News p. 4756. While it is clear that Congress intended to change Title VII as it had been interpreted by the Supreme Court in *Gilbert* and *Satty*, there is nothing in the amendment or in its legislative history to warrant any inference that Congress intended the change to be retroactive. The appropriate principle was recognized by the Eighth Circuit in *Peony Park v. O'Malley*, (1955) 223 F.2d 668, 671, *cert. denied* 350 U.S. 845, 76 S.Ct. 87, 100 L.Ed. 753, *reh. den.* 350 U.S. 898, 76 S.Ct. 150, 100 L.Ed. 789:

In 2 Sutherland, Statutory Construction (3rd Ed.), § 3004, at p. 225, it is stated:

"The usual purpose of a special interpretive statute is to correct a judicial interpretation of a prior law which the legislature determines to be inaccurate. Where such statutes are given any effect, the effect is prospective only."

Discerning no reversible error, we affirm the judgment of the district court.

*AFFIRMED.*