455 F.Supp. 182 (1978)
COMMUNICATION WORKERS OF AMERICA, AFL-CIO, etc., et al., Plaintiffs,
v.
SOUTHWESTERN BELL TELEPHONE COMPANY, a Missouri Corporation, Defendant.
Linda REDDEN et al., Plaintiffs,
v.
SOUTHWESTERN BELL TELEPHONE COMPANY, etc., et al., Defendants.
Mildred SHACKELFORD, Plaintiff,
v.
SOUTHWESTERN BELL TELEPHONE COMPANY, etc., et al., Defendants.
Susan K. CONNERS et al., Plaintiffs,
v.
SOUTHWESTERN BELL TELEPHONE COMPANY, etc., et al., Defendants.
Donna Lee McNULTY, Plaintiff,
v.
SOUTHWESTERN BELL TELEPHONE COMPANY, etc., et al., Defendants.
Veronica PIEDRA et al., Plaintiffs,
v.
SOUTHWESTERN BELL TELEPHONE COMPANY, etc., et al., Defendants.
Nos. 74-315C(A), 74-391C(A), 75-823C(A), 75-824C(A), 77-769C(A) and 77-1337C(A).
United States District Court, E. D. Missouri, E. D.
July 6, 1978.
*183 Henry M. Rosenblum, Robert B. O'Keefe, Smith & Conner, Houston, Tex., Doreen D. Dodson, St. Louis, Mo., for plaintiffs in 74-315C(A).
Leo E. Eickhoff, Jr., St. Louis, Mo., for defendants in all cases.
A. Thielens Phillips, Jr., Clayton, Mo., for plaintiffs in 74-391C(A).
Charles A. Werner, Schuchat, Cook & Werner, St. Louis, Mo., for C.W.A. in 74-391C(A), 75-823C(A), 75-824C(A) and 77-1337C(A).
James A. Mitchell, James M. Hays, III, Oklahoma City, Okl., for plaintiff in 75-823C(A).
Jack D. Becker, Sokolosky & Becker, Oklahoma City, Okl., for defendants in 75-823C(A).
C. John Forge, Jr., Hencke & Forge, Independence, Mo., for plaintiffs in 75-824C(A).
William D. Piedimonte, Piedimonte & Cochran, Independence, Mo., for plaintiff in 77-769C(A).
Louis Gilden, St. Louis, Mo., for plaintiffs in 74-315C(A) and 77-769C(A).
Michael D. Gordon, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for third-party defendant in 77-769C(A).
Les Mendelsohn, San Antonio, Tex., for plaintiffs in 77-1337C(A).
Thomas W. Cook, Tracy & Cook, San Antonio, Tex., for C.W.A. and Dist. 6 and Local 12143 in 77-1337C(A).

*184 MEMORANDUM AND ORDER
HARPER, District Judge.
This matter is before the Court on the cross motions of the individual plaintiffs and the defendant, Southwestern Bell Telephone Company (hereinafter referred to as Southwestern Bell), for summary judgment in six separate causes of action. These actions were originally sent by the Judicial Panel on Multidistrict Litigation to this Court for coordinated or consolidated pretrial proceedings. However, in the first five cases captioned above the parties have agreed to consolidation for trial purposes.
The original action, Communications Workers v. Southwestern Bell, No. 74-315, was filed in this Court on April 30, 1974. On May 31, 1974, the case Redden v. Southwestern Bell, No. 74-391 was filed before Judge John K. Regan of this Court.
On September 10, 1975, the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, transferred two additional cases to this Court, Shackelford v. Southwestern Bell, No. 75-823, from the Western District of Oklahoma, and Conners v. Southwestern Bell, No. 75-824, from the Western District of Missouri. The Judicial Panel's order also consolidated all four cases for coordinated pretrial proceedings. The complaints in the four actions were basically the same, alleging that Southwestern Bell discriminatorily refused to pay sickness and disability benefits, suspended participation in retirement and savings plans, and denied seniority credit and transfers, to women on maternity leave. All four actions were brought as purported class actions.
The Court called a conference of the attorneys on November 25, 1975, wherein the parties stipulated to consolidate the four cases for trial as a class action, but that the determination of the nature of the class be withheld until the resolution of Wetzel v. Liberty Mutual Ins. Co., 511 F.2d 199 (3rd Cir.), vacated in 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). Additionally, the parties agreed that there would be no pretrial discovery until the decision in Wetzel in the Supreme Court. It later developed that the trial court's order was found not to be an appealable order by the Supreme Court in Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. at 742-44, 96 S.Ct. 1202, but that the substantive issue of sex discrimination in disability plans for maternity leaves in Wetzel was addressed in General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976).
Following the decision in Gilbert, Southwestern Bell filed, on February 1, 1977, a motion for summary judgment in the four consolidated cases. On February 24, 1977, the individual plaintiffs filed a motion for a stay of proceedings until the Supreme Court ruled in Nashville Gas Co. v. Satty, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977) and Richmond Unified School District v. Berg, 434 U.S. 158, 98 S.Ct. 623, 54 L.Ed.2d 375 (1977), which dealt with the issue of sex discrimination in the grant of seniority rights subsequent to a maternity leave. Defendant's motion for summary judgment and plaintiffs' motion for a stay were set for argument on March 18, 1977. The Court did not formally order the stay but delayed ruling when it determined that the Satty case was set for the October 1977 term in the Supreme Court.
On June 30, 1977, the Judicial Panel on Multidistrict Litigation entered an order transferring McNulty v. Southwestern Bell, No. 77-769, from the Western District of Missouri to this Court for coordinated or consolidated pretrial proceedings with the other four cases. The attorney for the plaintiffs in McNulty advised the Court that the case could be consolidated for trial purposes. On August 8, 1977, Southwestern Bell filed a motion for summary judgment in No. 77-769 virtually identical to the motions previously filed in the other four cases.
On December 6, 1977, the Supreme Court handed down its decision in Nashville Gas Co. v. Satty, supra.
On December 12, 1977, the Judicial Panel on Multidistrict Litigation transferred Piedra v. Southwestern Bell, No. 77-1337, from the Western District of Texas to this Court *185 for coordinated or consolidated pretrial proceedings.
Early in 1978, the Court advised all attorneys to file any additional motions and briefs. On January 13, 1978, the individual plaintiffs in No. 74-315 filed a motion for summary judgment on the issue of seniority and stated in part, "There is no genuine issue as to a material fact on this issue."
On January 25, 1978, Southwestern Bell filed a motion for summary judgment in No. 77-1337 (Piedra) virtually identical to motions previously filed in the other five cases.
At the hearing on motions on April 21, 1978, the attorneys for the other plaintiffs adopted the motion for summary judgment filed by the individual plaintiff in No. 74-315 in their cases.
At that same hearing the Court suggested to the plaintiffs' attorney in 77-1337 (Piedra), the filing of an amended petition to separate into different counts the various allegations of the plaintiffs. Thereby the maternity related claims would be separated from claims of sex, race and national origin discrimination. Following the Court's suggestion, the plaintiffs in Piedra on May 31, 1978, filed an amended complaint in four counts. Count I was against Southwestern Bell only, and contains allegations of maternity related claims in Southwestern Bell's maternity leave, disability and seniority policies.
On June 14, 1978, Southwestern Bell filed a motion for summary judgment as to Count I of the amended petition in the Piedra case. The issues raised in Count I are essentially the same as those raised by the plaintiffs in the other five cases, and is the only count before the Court on a motion for summary judgment by the defendant, Southwestern Bell, in the Piedra case. While the defendant's motion for summary judgment has only been recently filed, the matter has received full consideration by the Court since the merits have been previously argued and briefed with supporting affidavits.
While the complaints in 74-391, 75-823, 75-824 and 77-769, contain brief references to race, religion and/or national origin discrimination, the Court will treat the complaints as raising only the issue of maternity related discrimination in Southwestern Bell's policies. These particular plaintiffs have not filed any charges of discrimination with the EEOC which relate to the other forms of discrimination. Further, during the lengthy pendency of these cases, these plaintiffs have not submitted any motion, brief or evidence which pertain to any form of discrimination other than maternity related discrimination. Therefore, the Court concludes that the references to other forms of discrimination in 74-391, 75-823, 75-824 and 77-769 constitute loose language, and that these complaints raise only the issue of sex discrimination.
Rule 56 of the Federal Rules of Civil Procedure considers summary judgment and provides in part:
"(c) Motion and Proceedings Thereon. * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
According to established principle, once a motion for summary judgment is made, the Court examines the evidence, not to decide issues of fact which may be presented, but rather to determine if any real issue exists. Doza v. American National Ins. Co., 314 F.2d 230, 232 (8th Cir. 1963). As interpreted by the courts, Rule 56 places on the moving party "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Jacobson v. Maryland Casualty Co., 336 F.2d 72, 84 (8th Cir.), cert. denied, 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965).
*186 There is no dispute as to the facts in these cases as to the issues before the Court and the parties do not contend otherwise. The merits of these cases turn on the application of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. to Southwestern Bell's maternity leave program, disability benefits plan, and rules pertaining to the accrual of seniority. The provisions of these programs, plans and rules have been in effect for a period of time, with only minor modifications, and are clearly set out by the materials before the Court. Thus, summary judgment may be properly granted in the cases at bar and in favor of the defendant, Southwestern Bell.
The facts material to the disposition of this proceeding, as disclosed in various affidavits and exhibits filed with the Court, may be summarized as follows: Southwestern Bell maintains a Plan for Employees' Pensions, Disability Benefits and Death Benefits (hereinafter referred to as the Benefits Plan), which provides "* * * for the payment of definite amounts to its employees when they are disabled by accident or sickness * * *." Benefits Plan, Section One.
Section Six of the Benefits Plan, entitled Sickness Disability Benefits, provides for payment of benefits on account of physical disability to work resulting from sickness to all employees after a minimum term of employment of six months. The benefits paid are set by schedule which varies the amount of payment according to the employee's length of service. Though the Benefits Plan includes sickness disabilities associated with pregnancy and childbirth in its coverage of sickness disabilities, it neither includes nor specifically excludes coverage for disability caused by normal pregnancy and childbirth. The following table shows the comparative experience of males and females receiving benefits under the Benefits Plan for accident and sickness disabilities, 1964 through 1976:

 Benefits Paid Per Benefit Cases Per
 $1000 Wages 1000 Employees 
 Year Male Female Male Female
 1964 8.7 13.6 95.1 157.3
 1965 8.3 12.7 103.9 154.2
 1966 8.1 12.4 99.2 158.4
 1967 7.6 11.6 93.5 144.4
 1968 7.9 12.4 96.7 157.3
 1969 7.9 11.5 98.0 170.8
 1970 7.2 11.1 100.5 171.9
 1971 7.3 12.6 88.2 154.3
 1972 8.3 12.6 98.4 166.4
 1973 7.9 13.3 93.9 173.8
 1974 Not Available 92.1 167.9
 1975 Not Available 103.1 181.9
 1976 Not Available 97.7 174.4

Southwestern Bell, pursuant to a collective bargaining agreement entered into with plaintiff, Communications Workers of America, AFL-CIO, on behalf of the employees involved herein, grants leaves of absence without pay upon request for good cause and for reasonable lengths of time. It has been the policy of Southwestern Bell to grant the requests of its female employees for leaves of absence for maternity reasons, including periods of time for pregnancy, childbirth and subsequent child care. A search of Southwestern Bell's employment records for the period October 1, 1970, through December 31, 1976, discloses no instance where the request of a female employee for a personal leave of absence for maternity reasons has been rejected. Pregnant employees, however, are not required to take a leave of absence. A pregnant employee may, for example, use accrued vacation time for the period in which she is absent from work.
The company's policy and practice has been to grant an employee's request for a *187 leave of absence from work for up to one year for maternity reasons and to allow the employee to select the date when such leave will begin. When an initial leave of absence is requested for less than a year, extensions may be requested to extend the leave up to one year. A leave may be extended beyond one year for good cause. There is no length of service requirement before an employee may request a personal leave of absence for maternity reasons. There is no limit on the number of leaves of absence that an employee may request for maternity reasons. An employee may schedule a vacation before or after the leave of absence period.
Personal leaves of absence for non-maternity reasons need not be approved if the employee's service is less than a year, and normally such leaves are not given if the employee's attendance and work performance has not been satisfactory. However, under company practice, pregnant employees are given a preferential right to a maternity leave of absence even though they have less than one year of service or if their attendance and performance has not been satisfactory.
Reemployment following a leave of absence is conditioned upon two factors: First, there must be work available. Second, the employee must be willing and able to perform the available work. Though a personal leave of absence does not carry any guarantee of reemployment, it has been Southwestern Bell's policy and practice to grant employees on leave preference for reemployment over new hires. If no work is available and at the time leave was granted it was reasonably anticipated that work would be available, all employees covered by the collective bargaining agreement are paid a termination allowance.
During the period from October 1, 1971, through December 31, 1976, Southwestern Bell granted a total of 14,385 personal leaves of absence, 11,913 of which were granted for maternity reasons. Of the employees on leaves of absence for reasons of maternity and who desired to return to work at the expiration of their leave, all were reemployed except eighteen. Eighteen persons were not reemployed because no work was available at the time in their locations. Fifteen of the eighteen not rehired were paid a termination allowance.
All employees who return to work with Southwestern Bell from a leave of absence are granted their accumulated seniority and service credits so long as they return to work on or before the expiration of their leave. All employees who return to work from a maternity leave receive an additional thirty days seniority and service credit.
Two exceptions to Southwestern Bell's seniority policy, as mentioned above, exist; First, during the period from October 1, 1971, to December 31, 1977, fifty-one employees returned to work before the end of the first thirty days of maternity leave. These employees received their accumulated seniority and service credits plus seniority and service credit only for the period they did not work.
Second, prior to July 18, 1974, for the employees in the traffic department in the states of Oklahoma and Texas, competitive seniority for transfer, upgrading and the like, were determined by the date of entry in the position involved, without deduction for any time absent from work on an approved leave of absence. With seniority based upon the date of entry in the position concerned, rather than net credited service, full credit was given for time off from work on any approved leave of absence. This policy was changed in the 1974 collective bargaining agreements. Thereafter seniority was to be determined by net credit service which excludes the accrual of seniority during a leave of absence except for the thirty additional days granted for maternity leaves.
The purpose of a leave of absence is to prevent a break in the continuity of an employee's term of employment. Consequently, an employee returning to work during or at the expiration of a leave of absence receives full benefit of any seniority that the employee had accumulated prior to leaving work on the leave of absence. The employee's accumulated seniority, plus *188 any additional days granted, is considered in determining benefits under the Benefits Plan, and for competitive purposes such as upgrading, transfer, job bidding, vacation selection, assignment of hours, and for all other purposes for which seniority is considered.
Employees who leave work on maternity leave and who do not apply for reinstatement on or before the expiration of their leave of absence will have a break in service. If they apply for and are reemployed at a later date, they begin a period of new service. After five years of new service, the Employees' Benefits Committee will bridge the old and new service, providing the old service was at least six months in duration. During the period October 3, 1972, to August 7, 1977, an employee on maternity leave was always credited with the first thirty days of her leave of absence, regardless of when the employee returned to work. Prior to October 3, 1972, and subsequent to August 7, 1977, an employee must return to work on or before the expiration of the leave of absence to obtain the additional days of seniority.
With respect to disabled employees, it has been customary for the Employees' Benefits Committee to grant leaves of absence to both male and female employees that are disabled by reason of accidental injury and illness when (1) there is an expectation that the employee will recover in a reasonable period of time, and (2) the employee is not eligible for disability benefits under the Benefits Plan or the period has expired for which the employee is eligible to receive disability benefits as determined by the employee's length of service. These leaves are granted without pay, without a guarantee of reemployment, and with no accrual of service credit during the period of the leave of absence. Service credit for the first thirty days of the disability leave of absence is given only to short-term employees who are not eligible for disability benefits. The benefit of accumulated seniority is given to the employee only if the employee returns to work on or before the expiration of the leave of absence. If an employee is not rehired on or before the expiration of the disability leave of absence, the employee will have a break in service and on rehire will not receive the benefit of accumulated seniority. After five years of new service, the benefits committee will bridge the old service to the new service providing the old service was at least six months in duration.
An employee disabled by reason of accidental injury or sickness receives service credit for the days absent from work in which the employee receives disability benefits under sections 5 and 6 of the Benefits Plan. For on-the-job injuries arising out of and in the course of employment by the company, weekly disability benefits may extend to retirement age when the employee would be placed on a pension. For sickness, after six months of service, weekly disability benefits may extend up to one year.
Over the past four years the Communications Workers of America and several female employees of Southwestern Bell have filed individual charges with the Equal Employment Opportunity Commission (hereinafter referred to as the EEOC) contending that Southwestern Bell was and presently is in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., by denying female employees absent for maternity reasons certain benefits provided to male employees absent on account of temporary disabilities. In each case the EEOC was unable to obtain conciliation and, accordingly, sent the respective complainants "right to sue" letters.
The various complaints accuse Southwestern Bell of discrimination on the basis of sex in violation of Title VII in its treatment of female employees who are pregnant. Each complaint cites Southwestern Bell for its failure to provide female employees under temporary disability due to childbirth and/or complications arising therefrom those rights, benefits and privileges which are made available to male employees under temporary disability. Several of the complaints further allege the existence of discrimination on the basis of sex in Southwestern Bell's leave of absence policy. The *189 charges with respect to the leave of absence policy are twofold. First, it is claimed that Southwestern Bell's practice of dictating the commencement and duration of a pregnant employee's leave of absence for maternity reasons is discriminatory. Second, it is alleged that Southwestern Bell discriminated on the basis of sex by deducting leave of absence time from the seniority of female employees absent by reason of live childbirth while failing to require the same leave of absence deductions from the seniority of male employees absent due to temporary disability.
Though not identical, the prayers for relief contained in the individual complaints are similar in a number of respects. Several of the complaints ask the Court to declare that the policies and practices of Southwestern Bell with respect to its pregnant employees constitute a violation of Title VII. Each complaint seeks monetary relief, including back pay, for those members of the defined class sustaining financial loss by reason of Southwestern Bell's alleged violation of Title VII. Several prayers for relief contain requests for the issuance of an order requiring Southwestern Bell to provide employees disabled because of pregnancy those options and benefits available to employees otherwise disabled. Several complaints request that the Court enjoin Southwestern Bell, both preliminarily and permanently, from engaging in policies and practices which discriminate against female employees on the basis of sex. Finally, each complaint prays for costs and reasonable attorneys' fees.
As noted earlier, defendant, Southwestern Bell, pursuant to Rule 56, FRCP, has moved the Court for summary judgment in its favor on the claims brought against it. Summary judgment is sought by Southwestern Bell on five particular matters:
First, it is requested that summary judgment issue that Title VII does not require Southwestern Bell to provide employment and disability benefits to female employees who leave work because of normal pregnancy and normal childbirth.
Second, Southwestern Bell seeks summary judgment in its favor with respect to the allegations contained in the six complaints that its Benefits Plan unlawfully discriminates again female employees on account of sex in violation of Title VII by failing to include wage continuation and other disability benefits for female employees absent from work because of normal pregnancy and childbirth.
Third, summary judgment is sought with respect to allegations that the Benefits Plan in question unlawfully discriminates against female employees on account of sex in violation of Title VII by failing to include provisions granting employment service credit to female employees on leave of absence from work by reason of normal pregnancy, childbirth and child care.
Fourth, Southwestern Bell moves the Court to issue summary judgment that its Benefits Plan, its collective bargaining agreement and its leave of absence policy are not discriminatory on account of sex in violation of Title VII where leaves of absence are granted to all employees, both male and female, for good personal reasons, of which pregnancy, childbirth and subsequent child care are considered by the employer to be good personal reasons.
Fifth, and finally, Southwestern Bell seeks a summary judgment that none of the six complaints state causes of action properly maintainable as class actions pursuant to Rule 23, FRCP
It is the opinion of the Court that the decision of the United States Supreme Court in General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), is dispositive of Southwestern Bell's first and second requests for summary judgment. The facts of that case disclose that General Electric Company, pursuant to an insurance plan, provided benefits to all employees disabled as a result of nonoccupational sickness or accident. The plaintiffs in Gilbert were female employees of General Electric, each of whom had presented claims to that company for disability benefits under its insurance plan to cover periods during which they were absent from *190 work by reason of pregnancy. These claims were denied by General Electric and soon thereafter the plaintiffs filed a complaint asserting that the denial of their claims constituted a violation of Title VII. The District Court in which the complaint was filed agreed, holding that General Electric, by excluding pregnancy disabilities from the coverage of its benefits plan, had engaged in sex discrimination in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). On appeal, this judgment was affirmed by the Court of Appeals of the Fourth Circuit. Gilbert v. General Electric Co., 519 F.2d 661 (4th Cir. 1975).
The Supreme Court reversed the decision of the Court of Appeals holding that General Electric's disability benefits plan did not violate Title VII even though it failed to cover pregnancy-related disabilities. As reasoned by the Court:
"* * *, gender-based discrimination does not result simply because an employer's disability benefits plan is less than all inclusive. For all that appears, pregnancy-related disabilities constitute an additional risk, unique to women, and the failure to compensate them for this risk does not destroy the presumed parity of the benefits, accruing to men and women alike, which results from the facially evenhanded inclusion of risks. To hold otherwise would endanger the commonsense notion that an employer who has no disability benefits program at all does not violate Title VII even though the `under-inclusion' of risks impacts, as a result of pregnancy-related disabilities, more heavily upon one gender than upon the other. Just as there is no facial gender-based discrimination in that case, so, too, there is none here." 429 U.S. 125, at 138-140, 97 S.Ct. 401, at 409-410.
Here, where the text of the Benefits Plan is facially neutral and where an affidavit filed with the Court reveals that the Benefits Plan has no discriminatory effect on female employees, summary judgment will issue: (1) That Title VII does not require Southwestern Bell to provide disability benefits to female employees leaving work for reason of normal pregnancy and childbirth; and (2) that Southwestern Bell does not unlawfully discriminate against female employees on account of sex in violation of Title VII by failing to include in its Benefits Plan disability benefits for female employees absent from work because of normal pregnancy and childbirth.
As to the defendant's leave of absence and seniority policies, the case of Nashville Gas Co. v. Satty, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977) is controlling. Therein the Supreme Court held that the employer's policy of denying accumulated seniority to female employees returning from pregnancy leave constituted an unlawful employment practice in violation of § 703(a)(2) of Title VII, 42 U.S.C. § 2000e-2(a)(2). Nashville Gas Co. v. Satty, supra, at 139, 98 S.Ct. at 350. The employer's policy consisted of requiring pregnant employees to take a formal leave of absence, the loss of all accumulated seniority, and permanent reemployment upon return from the leave only if no other employee working for the company applies for the position available. Nashville Gas Co. v. Satty, supra, at 137, 98 S.Ct. at 349.
None of those policies are present in the instant case. Southwestern Bell does not require pregnant employees to take a leave of absence. Rather, they are permitted to use accumulated vacation time. Employees on maternity leave do not lose accumulated seniority. Accumulated seniority is retained and an additional thirty days seniority is granted which is not available to employees on leave for other than maternity reasons. Finally, while reemployment following any leave of absence is not expressly guaranteed, the defendant has in practice been able to reemploy virtually all employees returning from a maternity leave. Southwestern Bell's policies do not attach any consequences to the condition of pregnancy that extend beyond the period of maternity leave. See Nashville Gas Co. v. Satty, supra, at 155, 98 S.Ct. at 358 (Stevens concurring).
The plaintiffs contend that the defendant's seniority policy is discriminatory in *191 that employees receiving disability benefits for accident or illness receive service credits for that period, while women on maternity leave receive only thirty days of seniority credit. The plaintiffs' argument is not without merit. An employer's "decision not to treat pregnancy as a disease or disability for purposes of seniority retention is not on its face a discriminatory policy." Nashville Gas Co. v. Satty, supra, at 140, 98 S.Ct. at 350. "Pregnancy is of course confined to women, but it is in other ways significantly different from the typical covered disease or disability." General Electric Co. v. Gilbert, supra, 429 U.S. at 136, 97 S.Ct. at 408. "Gilbert allowed the employer to treat pregnancy leave as a temporal gap in the full employment status of a woman. During that period, the employer may treat the employee in a manner consistent with the determination that pregnancy is not an illness." Nashville Gas Co. v. Satty, supra, 434 U.S. at 156, 98 S.Ct. at 358 (Stevens concurring).
Plaintiffs Alexander, Redden, Travis, Davis and Piedra have filed affidavits wherein they stated that they received maternity leaves at various times and upon reemployment received their accumulated seniority plus thirty days additional service credit for each maternity leave. These affidavits are consistent with the general policies of the company and with the decision in Nashville Gas Co. v. Satty, supra. These affidavits disclose no discriminatory effect in the defendant's policies.
Plaintiff McNulty filed an affidavit wherein she states that she did not receive the benefit of her accumulated seniority upon reemployment. The defendant filed a counter-affidavit which does not controvert McNulty's statement, however it does explain the surrounding circumstances. The only contradiction between the affidavits pertains to the dates involved, and these differences are minor. While issues of fact as to the accuracy of these dates exist, the significance of the dates are not so great as to be considered material to the charges of discrimination here. Hence this Court concludes that summary judgment is available here. Fed.R.Civ.P. 56(c); Neff v. World Publishing Co., 349 F.2d 235, 239 (8th Cir. 1965).
McNulty requested and received a leave of absence for maternity reasons for the period from August 2, 1971, to August 1, 1972. Before the expiration of her leave of absence, she requested reinstatement. Her job had been filled by another woman employee and under the union contract she did not have the right to bump existing employees off the job. On May 12, 1972, McNulty was offered a job similar to the one she previously had, at the same rate of pay. She declined this job offer since it was to be phased out when the work was finished. On July 24, 1972, she was offered reinstatement in her previous job as a clerk. She declined this job offer because her husband would not allow her to work the hours offered, 11:30 a. m. to 8:30 p. m. If she had accepted this job offer she would have been reinstated with full credit for her accumulated seniority. McNulty was re-engaged as a new employee on December 4, 1972. At that time she had a break in service and temporarily lost her accumulated seniority. Had she remained in that position for five years of new service, her old and new service would have been bridged according to the procedure previously discussed. On May 2, 1973, McNulty was dismissed from the company for reasons that are not pertinent here.
McNulty was treated in a manner consistent with the defendant's policies as previously discussed. The policies are applied across the board to male and female employees alike. McNulty's affidavit discloses no discriminatory effect in the employer's treatment of female employees.
The defendant's leave of absence and seniority policies at worst can be described as being facially neutral. Most of the terms of these policies apply to male and female employees alike. Any difference in treatment involves the grant of additional benefits to female employees on maternity leave, such as reduced requirements to obtain such a leave, and the grant of thirty days additional seniority. More accurately, *192 these policies are biased in favor of female employees seeking maternity leave.
Further, the application of these policies does not entail any discriminatory effect. The affidavits submitted by the plaintiffs do not show anything to the contrary. The defendant has not imposed any burden on women that men do not suffer. The Southwestern Bell plan does not attach any consequences to the condition of pregnancy that extends beyond the period of maternity leave.
Therefore, this Court concludes: (1) That Southwestern Bell's Benefits Plan does not unlawfully discriminate against female employees in violation of Title VII by failing to include provisions granting employment service credit to female employees on maternity leave; and (2) that Southwestern Bell's Benefits Plan, collective bargaining agreement and leave of absence policy are not discriminatory in violation of Title VII where leaves of absence are granted to all employees, both male and female, for good personal reasons, and where pregnancy, childbirth and subsequent child care are considered by the employer to be good personal reasons.
With respect to Southwestern Bell's motion for summary judgment that none of the six complaints are maintainable as class actions, the motion is denied. The parties in the first four cases captioned above had previously entered into a stipulation on November 25, 1975, that the cases would proceed as class actions. The last two cases captioned above have been treated the same. "[A] suit brought as a class action should be treated as such for purposes of dismissal or compromise, until there is a full determination that the class action is not proper." Kahan v. Rosensteil, 424 F.2d 161, 169 (3rd Cir.), cert. denied 389 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). However, there is no occasion or need to determine the nature and members of the class or classes prior to the disposition of the motions for summary judgment.
Accordingly, the motions of defendant, Southwestern Bell, for summary judgment are sustained against the plaintiffs in No. 74-315 (Communications Workers), No. 74-391 (Redden), No. 75-823 (Shackelford), No. 75-824 (Conners), No. 77-769 (McNulty), and as to Count I in No. 77-1337 (Piedra). Plaintiffs' motion for summary judgment on the issue of seniority is DENIED. The clerk of the Court will prepare and enter an order to that effect. It should be noted that the Court's order herein does not dispose of nor in any way affect the counterclaim of Southwestern Bell against the Communication Workers in No. 74-315, the cross-claims of the individual plaintiffs against the Communication Workers in No. 74-315, Counts II, III and IV in No. 77-1337, or any of the third-party claims brought by Southwestern Bell against the Communication Workers.